**1810.**

Horsey
vs
The State.

The cause was argued before BUCHANAN, NICHOLSON, GANTT, and EARLE, J. by

*Martin,* for the Appellant, and by
*Barroll* and *Chambers,* for the Appellee:

THIS COURT *reversed* the judgment of the General Court, and *affirmed* that of the County Court.

JUDGMENT OF REVERSAL REVERSED.

---

JUNE (E. S.)

HORSEY vs. THE STATE.

A special court of oyer and terminer and gaol delivery, acting under a commission from the governor, has all the powers and jurisdiction which can be exercised by the county court, in criminal cases.

Certain objections, made in arrest of judgment on a verdict of guilty in the above case, overruled, viz. Variances between the names of the grand and petit jurors who found the indictment and verdict, and those returned on the *venire* —As to the manner of issuing the *venire* to summon the jury—the committing the prisoner without his being brought into court, by a *capias* —the not issuing a *capias*—there being no presentment found; and it not appearing that the jurors were freeholders.

WRIT OF ERROR to the justices of a *special court* of Oyer and Terminer and Gaol Delivery for *Worcester* county, to remove the proceedings on a judgment in a criminal prosecution, against the plaintiff in error, for *murder.* The verdict in the court below was guilty, and the prisoner, by his counsel, moved the court in arrest of judgment, and assigned the following reasons: 1. Previous to the adoption of the constitution of this state, all the criminal jurisdiction of the province was vested in, and exercised by, the provincial and county courts. That instrument recognized the county courts, and established a court called The General Court, to which the powers and jurisdiction, exercised by the late provincial court, were transferred. By that instrument an executive power was provided for the state, consisting of a governor and council. The governor is expressly prohibited from the exercise of any prerogative by virtue of any law, statute, or custom of *England.* The issuing of commissions of Oyer and Terminer in *England,* is an exercise of the royal prerogative, inherent in the King by the common law. By the constitution of this state, the powers to be exercised by the governor and council are expressly prescribed; and it is provided and enjoined, that all judges and justices should thereafter be appointed by the governor, by and with the advice and consent of the council. The persons named in a commission of Oyer and Terminer, &c. and authorised thereby to hear and determine criminal charges in any particular place, when acting by virtue thereof, are in the exercise of high and important judicial powers, and are known to the law as justices. The act of assembly, passed at *November* session 1807, *ch.* 1, by virtue of which the commission, under which this court has

been, and now is sitting, has been issued, gives the power to the governor alone, without the advice and consent of the council, to issue commissions of Oyer and Terminer. Inasmuch, therefore, as the justices of this court have been appointed and commissioned by the governor alone, it is asserted that, under the constitution of the state, the appointment is not only unauthorised, but by the language thereof, expressly prohibited.

2. The jurors, whose names are on the *venire*, are the proper persons to find a bill of indictment. The indictment in this case appears to be found by other jurors, to wit, *Roland E. Bevans* and *Edward Briddle*, whose names are not on the *venire*. [The sheriff's return stated that he had summoned, amongst others, "*Rolin E. Bevans*" and "*Edward Bridle.*"]

3. The *venire facias* issued in this case, whereby the petit jurors were summoned, was signed by the clerk of *Worcester* county court, and under the seal of *Worcester* county court; whereas by law it ought to have been under the hands and seals of the justices of this court—the clerk of *Worcester* county court not being an officer of this court. [The *venire* to summon the grand jurors, and the *venire* to summon the petit jurors, were both tested in the names of *William Polk*, *John Done* and *William Bond Martin*, Esquires, judges of the court of oyer and terminer, &c. and signed by the clerk, and sealed with the seal of *Worcester* county court.]

4. When this court met under the commission, *Horsey*, the prisoner, was not in the gaol of *Worcester* county by virtue of any legal commitment or process; and this court have jurisdiction only to hear and determine cases where the offenders were legally in gaol; and during their session they have no legal right to commit offenders, and to hear and determine on the offences for which they may be so committed.

5. There is a variance between the *venire* for the petit jury, in the names of the jury, and the names of the jury empannelled to try the case, and who have found the verdict.

6. No *capias* was issued against *Horsey*, the prisoner, before he was committed, and a commitment, without being brought into court by a *capias*, was improper and illegal.

7. After the indictment was found, by law, a *capias* should have issued to bring in the prisoner to answer the indictment, which was not done in this case.

8. By law, an indictment cannot be found without the presentment of a grand jury, or an order by the county court. [In this case there was a presentment found by the grand jury summoned under the commission.]

9. By law, no criminal process can issue or be awarded from any court of original jurisdiction, unless on presentment of a grand jury, or special order of the county court to be entered on record.

10. It should appear by the record that the jurors were freeholders, which does not appear.

The court of oyer and terminer, &c. overruled the motion, and rendered judgment upon the verdict that the prisoner be hanged, &c. The prisoner obtained a writ of error, and the proceedings were brought before this court.

The cause was argued before Buchanan, Nicholson, Gantt and Earle, J. by

*Whittington* and *Wilson*, for the Plaintiff in error, and by *J. Bayly*, for the State.

JUDGMENT AFFIRMED.

---

## Bowly's Lessee vs Lammot.

W L. by his will, devised as follows: "I give and bequeath to my dear wife A L, for and during her natural life, my tract of land and plantation called C, (save and except the rope walk)." "Item, I give and bequeath to my dear son G L, his heirs and assigns, my tract of land called C; but in case my said son should die before he attains of legal age, and without issue, then I leave and bequeath the said tract of land called C, to my dear wife A L, or her assigns, to be at her own will and disposal, as it originally was, save and except five acres to be laid off," &c. "and that said five acres, together with the rope walk, I give and bequeath to my dear nephew D B, his heirs and assigns    And it is further my intention, that if my dear wife should die before my dear son G, so that my estate be vested in him, and he should afterwards die before he attains legal age, and without lawful issue, then," &c —*Held*, that the devise of the *rope walk* to D B was an immediate, and not a contingent devise.

The intention of the testator is to be collected from the words of the will, and the whole of the will is to be considered and compared    Such construction must be made as will gratify every part of the will, if it can be done consistent with the general intent.

The *rope-walk*, and the five acres, must be considered as the same.

Appeal from *Baltimore* county court. *Ejectment* for a tract of land called *Chatsworth*, lying in *Baltimore* county. Defence was taken on warrant, and plots were made. At the trial it was admitted by the parties that *William Lux*, deceased, was seized in fee simple, on the 1st of January 1773, of the tract of land called *Chatsworth*, granted to him by patent, containing 950 acres; and being so seized, made his will on the 5th of May 1773, whereby he devised, among other things as follows: "*Item.* I give and bequeath to my dear wife *Agnes Lux*, for and during her natural life, my tract of land and plantation called