BENJAMIN ECCLESTON *vs.* STATE USE MARY KENDALL. *December*, 1835.

The recognizance of the father of an illegitimate child, to indemnify the County from all charges that may arise for its maintenance, taken under the acts of 1781, ch. 47, and 1796, ch. 34, is both retrospective and prospective in its operation, and covers within the limited amount prescribed by the act of Assembly, all such charges arising between the birth of the child and its arrival at the age of seven years.

Under the act of 1796, a justice of the peace is competent to issue an order requiring the father and his sureties, to pay a sum of money not exceeding $30 a year, for maintenance provided for the child, anterior to the date of the order, and this, whether for one, or more years

APPEAL from *Baltimore* County court.

This was a *scire facias* issued in the name of the *State of Maryland*, for the use of *Mary Kendall*, on the 24th of

June, 1833, to compel the appellant, as the surety of one *Elijah Brookes*, to pay to the said *Mary*, the sum of $120, as a compensation for the maintenance of her female illegitimate child, of which said *Brookes* was the father.

The proceeding was grounded upon the following order, by a justice of the peace, the service of which on the appellant, and his refusal to pay the same, was proved.

" *State of Maryland—Baltimore* county, to wit :—

On application to me by *Mary Kendall*, the mother of a female illegitimate child for an order on *Elijah Brookes*, the father of her said child, for a sum of money, adequate to the maintenance of the said child. And whereas on the first day of April, in the year 1829, the said *Elijah Brookes*, and one *Benjamin Eccleston*, entered into a recognizance in the sum of *thirty pounds*, current money, to the *State of Maryland*, that the said *Elijah Brookes*, should indemnify *Baltimore* County, for all charges that might arise, for the maintenance of the said child; and whereas the said *Mary Kendall*, on this 4th day of May, in the year 1833, before me, the subscriber, one of the justices of the peace, of the *State of Maryland*, in and for *Baltimore* county aforesaid, appeared and made oath on the Holy Evangely of Almighty God, that she has not received any sum or sums from *Elijah Brookes* or *Benjamin Eccleston*, (his security,) for the use or maintenance of the said illegitimate child, in her care or custody, except for the first year, and that she hath maintained the said child from the 28th day of February, in the year 1829, until the 28th day of February last past, at which time the said child was five years old. You are therefore hereby ordered and required, to pay unto the said *Mary Kendall*, the sum of $120, as an adequate compensation for the maintenance of the said illegitimate child, for four years from the 28th day of February, 1829, and ending on the 28th day of February, 1833. Given under my hand and seal, this 4th day of May, 1833."

To the *scire facias*, which issued upon the recognizance, recited in this order, the appellant pleaded, that the justice of the peace by whom it was given, "had no authority in the law to give the same."

There was a general demurrer to this plea, and joinder; and from the judgment of the County court sustaining the demurrer, and giving judgment for the $120, with interest from the date of the order, and costs, the appellant prosecuted an appeal to this court.

The cause was argued before Buchanan, Ch. J. and Stephen, Dorsey, Chambers, and Spence, Judges.

D. Stewart, for the appellant, contended,

1. The acts of Assembly of 1781, ch. 47, and 1796, ch. 34, look to the prospective indemnity of the county from the charge of supporting illegitimate children.

The contract whatever it may be, is with the county, and the county alone therefore, can enforce it; but in this case, an attempt is made to enforce it, not only by a party not within its scope or provisions, but for a period antecedently to the date of the order.

2. But admitting that the appellant is liable in the present proceeding, still the judgment of the county court must be reversed. He can only be made to pay the £30 with interest, in like manner as obligors in a bond; unless indeed, a contract of indemnity can be converted into a contract of compensation. *State vs. Wyman*, 2 *Gill and John. Rep.* 279.

McMahon for the appellee.

1. The act of 1796, ch. 34, requires the persons referred to, in its provisions, to do a certain act, which they are bound to do, whether the county is damnified or not. It imposes an imperative obligation to pay the money. If the mother, or any other person supports the child, the mother or such person is substituted for the county, having done that, which the father was bound to do, indemnified the

county, and may then proceed against the father, and his sureties in the recognizance, for the money so spent, provided the amount be within the limits prescribed by the act.

The objection founded upon the retrospective nature of the order, cannot be sustained. If injury had resulted to the county by the maintenance of the child, the recognizors could have been compelled to indemnify; and if so, the party who saved the county harmless may do the same. Under the act of 1796, the father is bound to support the child for seven years from its birth, and not merely from the date of his recognizance, which is therefore necessarily, to a certain extent, retrospective.

2. The question of the liability of the appellant, beyond the penalty and interest, is not presented by the demurrer; but if it was, the judgment of the county court is not erroneous, as the obligation in this case, is a *continuing* obligation for seven years.

Dorsey, Judge, delivered the opinion of the court.

Whatever may be the literal import of the acts of Assembly, passed November session, 1781, ch. 13, and the supplements thereto passed, the first in 1785, ch. 47, and the second in 1796, ch. 34, we hold ourselves bound by the uniform judicial construction given to those acts of Assembly, in the courts of justice of the *State of Maryland*, from the passage of the act of 1796, to the present day; according to which, it has always been held, that the recognizance of the father to indemnify the county, " from all charges that, may arise for the maintenance of his illegitimate child, is retrospective as well as prospective in its operation; and covers within the limited amount prescribed by the act of Assembly, all such charges arising between the birth of the child, and the period of its arrival at the age of seven years. And by the same construction it has always been held, that it was competent for a justice of the peace, under the said act of 1796 to issue an order, requiring the father, and his

securities to pay a sum of money, not exceeding thirty dollars a year, for maintenance provided for the child, anterior to the date of such order.

Having stated the settled general interpretation of the acts of Assembly, and of the recognizance entered into, in pursuance of the requisitions thereof, we have thereby disposed of those objections of the appellant to the judgment of the county court, resulting from the alleged exclusively prospective operation of those acts; according to which it was contended that the recognizors were liable for nothing that had occurred before the recognizance was taken; and that no order could be issued thereon for maintenance, furnished the child antecedently to the issuing of such order.

To the *scire facias* issued in this case, the appellant pleaded that the justice of the peace, had "no authority in the law" to issue the order whereon the *scire facias* was founded. A general demurrer to this plea, and joinder therein, after the disposition previously made of the appellant's other objections, to this order, presents to us the isolated question; whether the justice of the peace had the *authority* to issue the order requiring the payment of the one hundred and twenty dollars? Upon the authority of the justice of the peace to issue such an order we entertain no doubt.

The time of the maintenance of the child being four years, the power of issuing an order requiring the father, his surety or sureties, to pay such a sum of money as may appear adequate to the maintenance of the child, not exceeding thirty dollars *per annum*, is explicitly given to the justice of the peace by the act of 1796, ch. 34. As far, therefore, as regards the abstract authority of the justice of the peace to issue the order in question, we entirely concur with the county court in ruling good the demurrer, and affirm their judgment.

**JUDGMENT AFFIRMED.**