The State *vs.* Phelps.

# THE STATE OF MARYLAND *vs.* JOSHUA PHELPS.

A motion in arrest of judgment must be based upon some error or defect *appearing in the record.*

The objection in a case of bastardy, that the record does not show the proceedings before the magistrate required by law, cannot, since the act of 1852, ch. 63, be availed of by motion in arrest, because, if valid, it could have been taken advantage of by demurrer.

The offence of being the father of an illegitimate child, under the act of 1781, ch. 13, is a *misdemeanor:* the proceeding is treated by the law itself as a *criminal proceeding,* and is classed among *criminal cases.*

ERROR to the Circuit Court for Frederick county.

The record in this case shows, that on the 21st of November 1853, a justice of the peace for Frederick county took and returned to the circuit court for that county the recognizance of the defendant in error, reciting that a certain Ruth Barnes hath charged him on oath with being the father of a male illegitimate child, of which she was delivered on the 6th of August 1847, which charge he denies, and conditioned for his appearance before said court at its ensuing term to answer the charge, and to abide and perform such order as shall be made in pursuance of the act of 1781, ch. 13, and its supplements.

At the ensuing term of the circuit court an indictment was found charging the defendant in error with having, on the 6th of October 1848, begotten on the body of Ruth Barnes, now called Ruth Trout, a free white woman of said county, a male illegitimate child, of which she was delivered on the 6th of August 1849. On this indictment he was tried, and being found guilty moved in arrest of judgment, for reasons substantially as follows:

1st. That the record and proceedings in the case do not show any information to the justice that said Ruth had an illegitimate child, or warrant to the constable to bring her before the justice, and demand of indemnity from her, or her discovery on oath of the father and her discharge, and demand from the father of indemnity to the county, as required by law.

2nd. That it does not appear that Phelps felt himself aggrieved by any judgment of the justice, and that the justice required him to give recognizance for his appearance at the circuit court.

3rd. That it does not appear that any justice gave any judgment against Phelps that he was the father of said child, or ever required him to give security to indemnify the county for its maintenance.

4th. That the recognizance does not show that the Ruth Barnes mentioned in it was a free woman, or was a female person residing in Frederick county.

5th. That it does not appear that Phelps was ever charged before any justice with being the father of an illegitimate child begotten on the body of any female person or free woman residing in Frederick county.

6th. That it does not appear that the Ruth Barnes mentioned in the recognizance, and the Ruth Barnes now called Ruth Trout, mentioned in the indictment, are one and the same person.

7th. That the child mentioned in the recognizance is not the same as that mentioned in the indictment, the former stating that the child was born on the 6th of August 1847, and the latter that it was begotten on the 6th of October 1848, and born on the 6th of August 1849.

8th. That the record and proceedings in the case do not disclose a case giving jurisdiction to the circuit court, and therefore no judgment can be entered therein.

9th. That the record and proceedings are in other respects illegal and insufficient to sustain a judgment.

The court (NELSON, J.) sustained the motion and arrested the judgment. To correct this decision the State sued out the present writ of error from the equity side of the said circuit court.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Bradley T. Johnson,* State's Attorney for Frederick county, argued for the State:

1st. That the preliminary proceedings before the justice formed no part of the record in the court below, and any irregularity therein not appearing therefore to that court could furnish no ground for arrest of judgment. If their return to that court was required neither by statute nor common law, then such return was supererogatory and will not make them a part of the record. Neither the act of 1781, ch. 13, nor 1785, ch. 47, nor 1805, ch. 65, sec. 24, require or authorise such return. On the contrary, the act of 1785 was passed partly to remedy the defect in the previous statute which did not require a return to the county courts of recognizances to indemnify. It is silent as to recognizances of appeal. These proceedings might have been brought before the circuit court by *certiorari,* (2 *Hawk., ch. 27, secs.* 23, 25, 60,) and if found irregular quashed. But not being before the court, they will be presumed to be rightly done until the contrary *is proved. Root's case,* in 10 *G. & J.,* 374, does not conflict with this view. The point there *decided* was as to a discrepancy between the indictment and the judgment, undoubtedly records of the court.

2nd. That on an appeal in bastardy the proceedings are to be "as in other criminal cases," (*Act of* 1781, *ch. 13, sec. 2;* 5 *Gill,* 90, *Oldham vs. The State,*) and the finding of the

indictment cures all previous irregularities; the party is tried on that alone. Time is immaterial to be proved save when of the essence of the offence, and therefore a variance between that stated in the recognizance and in the indictment is immaterial.

3rd. That all the reasons relied upon, including the eighth, which is a plea to the jurisdiction, if of any weight, disclose grounds of demurrer. 1 *Wat. Arch. Cr. Pl.*, 115. 1 *Chitty's Pl.*, 644. 1 *Term Rep.*, 316, *Rex vs. Fearnley*. 6 *Md. Rep.*, 406, *Cochrane vs. The State*. They cannot therefore, since the act of 1852, ch. 63, be taken advantage of in arrest of judgment, because, by the express terms of that act, nothing which is the subject of demurrer, can be availed of by a motion in arrest.

*William P. Maulsby* for the defendant in error, argued:

1st. That in this case "the jurisdiction and mode of proceeding being peculiar must be exactly pursued." 10 *G. & J.*, 374, *Root vs. The State*. The jurisdiction given to the circuit court is appellate in its nature, the words of "the proceedings to be there had as in other criminal cases," being only directory of the mode of conducting the appeal, and therefore the whole proceedings had before the justice form part of the record to be transmitted and reviewed.

2nd. That in this case the "mode of proceeding" prescribed by the act of 1781, ch. 13, was not pursued in the various particulars pointed out in the reasons assigned for the motion in arrest. That act and its supplement of 1785, ch. 47, are to be construed together, and do not authorise the initiation of the proceedings therein provided by the mother of an illegitimate child, either for the promotion of her own interests or the gratification of her own passions, but their object is, in truth, to indemnify the county, and the first proceeding under them must be the warrant of the justice, requiring the mother to be carried before him, and the discovery by her, on oath, of the father, is made to precede her discharge from the warrant.

3rd. That a demurrer would not have availed the defendant in error, because that would have reached only to the indict-

ment, which is good on its face. Nor is the case covered by the act of 1852, ch. 63, for that act applies only to felonies and misdemeanors, whereas this case· is neither the one nor the other, but simply a proceeding by which the county is to be *indemnified* against expenses incurred in the maintenance and support of the illegitimate child.

ECCLESTON, J., delivered the opinion of this court.

The reasons assigned in support of the motion in arrest of judgment relate to matters prior to the verdict, and either allege the record to be defective on account of the absence of such proceedings before the magistrate as were required by law, or on account of a variance between the recognizance returned by the magistrate and the indictment. These reasons necessarily assume, not only that the proceedings to which they allude should have taken place, but also that they were necessary parts of the record; for a motion in arrest of judgment must be based upon some error or defect appearing in the record. *Amer. Cr. Law, (by Wharton,)* 975, (3 *Ed.,*) 3 *H. & J.,* 2, *Horsey vs. The State.*

In *Root vs. The State,* 10 *G. & J.,* 374, upon a motion in arrest of judgment, it is said on the part of the appellant: "The indictment and verdict are not warranted by the proceedings filed in this case, and making part of the record thereof, and upon the whole record no judgment or order can be passed." And it is evident the court considered the proceedings returned by the magistrate as being before them on the appeal. They speak of the affidavit and recognizance as correct, and all the subsequent proceedings as erroneous: and then say: "The indictment, so far from being pursuant to the affidavit, makes a case in which all the parties reside in *Carroll* county, and in which consequently *Carroll* county is to be indemnified.

On this indictment a verdict was rendered against the party charged, and the judgment on that verdict, so far from pursuing its finding, directs a recognizance to indemnify *Frederick* county.

The indictment should have stated the fact of the mother's

4    v.9

residence with the child in *Frederick*, so that the verdict could be properly given, to compel the recognizance to indemnify the county of *Frederick*."·

For these errors the court reversed the decision of the county court, which had overruled the motion in arrest.

Now if the proceedings before a magistrate in a case of this sort should constitute parts of the record, and admitting that prior to the act of 1852, ch. 63, the objections relied upon to sustain the present motion in arrest might have availed the traverser, nevertheless they cannot do so since the passage of that act, because these objections could have been taken advantage of by demurrer. And the act will not permit a judgment to be arrested on a motion for that purpose, for any matter which is a ground of demurrer.

Thus the traverser is placed in this dilemma. If the proceedings on which his objections are based are not necessarily parts of the record in such a case, then, because they are not, his motion in arrest must fail. And if such proceedings are required to complete the record, then the defects relied upon would be reached by a demurrer, and the motion must be overruled under the act of 1852.

That we are right in supposing a demurrer would reach the alleged defects, if by the record they are shown to exist, may be seen by reference to *American Cr. Law*, 242, 243, *by Wharton*, 3 *Ed.*, where it is said: "A demurrer puts the legality of the whole proceedings in issue, and compels the court to examine the validity of the whole record, and therefore, in an indictment removed from an inferior court, if it appear from the caption that the court before which it was taken had no jurisdiction over it, it will be adjudged to be invalid." See also the authorities referred to in note 1 on same page, and 1 *Archb. Cr. Pr. & Pl.*, 115, *(by Waterman.)*

With a view to relieve his case from the operation of the act of 1852, the appellant's counsel says, its provisions relate to felonies and misdemeanors only, and this case is neither a felony or a misdemeanor. But we think it is the latter.

*Misdemesnor*, or *Misdemeanour*, is described in 4 *Jacob's Law Dic.*, 292, as a *crime* less than felony. And he says:

The State *vs.* Phelps.

"The term misdemeanor is generally used in contradistinction to felony, and comprehends *all indictable offences* which do not amount to felony, as *perjury, libels, conspiracies, assaults,*" *&c.* This author also says: "This term may be considered as, and in fact is, a *genus,* which contains under it a great number of *species,* almost as various in their nature as human actions." See also the definition of a *misdemesnor* in 4 *Bl. Com.,* *Ch.* 1, *page* 5, and in *note* 2.

The act of 1781, ch. 13, entitled, "An act directing the proceedings against persons guilty of fornication," is the law on which this case was instituted. The first section directs what is to be done before a justice of the peace, and prescribes his duty. Under the second section, if the party charged with being the father of the bastard child thinks himself aggrieved by the judgment of the justice, a recognizance is to be taken by the justice for the appearance of the party at the next court, and that court is to take cognizance thereof, "and such proceedings shall thereupon be had as in other *criminal cases.*" This act was brought before the Court of Appeals for construction, in *Oldham vs. State, use of Crothers,* 5 *Gill,* 90. The father of an illegitimate child had been discharged under the insolvent laws, which discharge he contended released him from his recognizance previously entered into by him for the support of the child. But the court held the proceeding to be a criminal one, and therefore he continued to be bound by the recognizance, notwithstanding he had taken the benefit of the insolvent laws.

In reference to such a case in the county court, it is said by the Court of Appeals: "The same proceedings are to be had by indictment as in other *criminal cases,* and if found *guilty,* then the court adjudge him to give security to indemnify the county, and if he neglect or refuse to comply, he is to *stand committed until he shall comply.*

The proceeding is treated by the law as a *criminal proceeding,* and it is classed by the law itself among *criminal cases.*

That the design of the law, in the punishment inflicted, was to indemnify the county, does not in the least change the character of the proceeding. The recognizance is to be given

to the *State* to accomplish a purpose of public convenience, and the insolvent laws do not reach such a case."

The act of 1796, ch. 34, authorises the mother or other person maintaining the child to demand the money falling due under the recognizance for the child's support, but this substitution of the mother or other person, in the place of the county, the court say "does not at all change the character of the proceeding."

After such an interpretation of the act of 1781 we think this case comes within the definition of a misdemeanor, as given by the authorities to which reference has been made, and since the act of 1852 such a motion in arrest of judgment cannot be sustained.

*Judgment reversed and procedendo ordered.*