(Decided 24th March, 1891.)

## THOMAS SHEAY *vs.* STATE. SAME *vs.* SAME.

*Bastardy—Criminal proceeding—Defence.*

Section 5 of Article 12 of the Code of Public General Laws, provides that if the putative father of an illegitimate child shall feel aggrieved by the judgment of the magistrate, the magistrate shall require him to give security for his appearance at the next Circuit Court for the county, or the Criminal Court of Baltimore, when such proceedings shall be thereupon had "as in other criminal cases;" and if upon trial he be found guilty, the Court shall order him to give security to indemnify the county from any charges that may accrue for the maintenance of the child, and upon his failure to give such security, he shall be committed to the custody of the sheriff. HELD :

That the offence which the law designs to punish is fornication, and if that occurs in the State, it is no defence to an indictment

Sheay *vs.* State.

therefor, that the child was born out of the State, and that the mother has continued to reside out of the State.

WRIT OF ERROR and APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court. Section 5 of Article 12 of the Code of Public General Laws, is as follows :

"If any person charged with being the father of an illegitimate child shall feel aggrieved by the judgment of the justice, the justice shall require him to enter into recognizance for his appearance at the next Circuit Court for the county, or the Criminal Court of Baltimore, if in the City of Baltimore, and the said Court shall take cognizance thereof, and such proceedings shall be thereupon had, as in other criminal cases ; and if the person so charged shall be found guilty by the verdict of a jury or by the Court, if the case be tried before the Court, the Court shall immediately order such person to give security to indemnify the county from any charges that may accrue for the maintenance of said child, and if he shall neglect or refuse to give such security, he shall be committed to the custody of the sheriff until he comply; provided that such custody shall not continue longer than twelve months, nor less than six months, in the discretion of the Court."

The cause was submitted on briefs to ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and MC-SHERRY, J.

*Benjamin A. Richmond,* and *D. J. Blackiston,* for the appellant and plaintiff in error.

*Wm. Pinkney Whyte, Attorney-General,* for the appellee and defendant in error.

Sheay *vs.* State.

MILLER, J., delivered the opinion of the Court.

Sheay was indicted in the Circuit Court for Alleghany County for bastardy. The indictment, which was found on the 17th of October, 1890, is in the usual form, and charges that the traverser did, on the 8th of February, 1889, at the county aforesaid, beget on the body of Ida Barnard, a free white woman of that county, a female illegitimate child, of which child the said Ida was afterwards on the 8th of November, 1889, at the county aforesaid, delivered; and that said child was then and there born alive, and is still living, to wit, at Alleghany County aforesaid. To this indictment he pleaded, 1st, not guilty, and 2nd, that the illegitimate child in the indictment named was not born or delivered in Alleghany County, as charged, but was born in the City of Pittsburgh, in the State of Pennsylvania, where its mother was then actually residing, and where she has ever since resided, and still resides.

To this second plea the State interposed a demurrer, which was sustained. The case was then tried before the Court without a jury. The traverser was found guilty, and the usual judgment entered against him, that he enter into recognizance in the sum of $80, to indemnify the county from all charges that may arise, for the maintenance of the child, or stand committed to the custody of the sheriff for the period of twelve months. Does this second plea set up a valid defence to the indictment? This is the sole question in the case, and it is presented both by a wrif of error and by an appeal on an exception taken to a ruling of the Court at the trial.

There is no dispute as to the facts. The traverser is the father of the child. The begetting of the child occurred in Alleghany County in February, 1889, where the mother then resided, living out as a servant girl, and where she continued to reside until the following October, when she went to her home in Pittsburgh, and

has continued to reside there ever since.    The child was born in Pittsburgh on the 8th of November, 1889.    In July, 1890, the mother brought the child to Alleghany County for the purpose of swearing it upon the traverser, but not to reside there.    At this visit she remained in the county about two weeks, and swore out the warrant upon which the traverser was arrested and brought before a magistrate.    He denied the paternity, and entered into recognizance to appear at the following October Term of the Circuit Court for that county.    She then returned with her child to her home in Pittsburgh, and continued to reside there until the sitting in October, 1890, of the October Term of that Court, when she came with her child to Alleghany County for the purpose of testifying before the grand jury, but not to reside there.    She did so testify, and remained in the county to attend the trial of the case, and testified at the trial.    As soon as the trial was concluded, she intended to return to Pittsburgh, and to continue her residence there.    Upon these facts the Court made the ruling complained of against the traverser, and found him guilty.

The proceedings in cases of this character are regulated by statute, and are not substantially different, under the present law, from those prescribed by the old Act of 1781, ch. 13, entitled "An Act directing proceedings against persons *guilty of fornication.*"    If the putative father, when brought before the magistrate, denies the paternity of the child, and is aggrieved by the judgment of the magistrate requiring him to give security to indemnify the county from all charges that may arise for its maintenance, the case goes, upon his recognizance to appear, to the Court, where such proceedings are to be had thereon, by indictment "as in other criminal cases."    If upon trial he is found guilty then the Court adjudges him to give such security, or to be committed to the custody of the sheriff for not less than six

nor more than twelve months. *Code, Art.* 12, *sec.* 5. The proceeding is treated by the law as a criminal proceeding, and is classed by the law itself among criminal cases. The fact that the design of the punishment is to indemnify the county does not in the least change the *character* of the proceeding. The Code also gives the mother or other person who maintains the child, the right to obtain the fruits of the recognizance by process thereon requiring the father to pay them such sum as may appear adequate for the maintenance of the child, not exceeding thirty dollars per annum, until the said child shall arrive at the age of seven years. This is a substitution of the mother or other person, at their election, in the place of the county, but does not at all change the character of the proceeding. All this is familiar law, settled by the decisions of this Court. *Oldham vs. State, use of Crothers,* 5 *Gill,* 90; *State vs. Phelps,* 9 *Md.,* 21.

In *Owens vs. The State,* 10 *Md.,* 164, where it was shown that the child was both begotten and born out of the State, it was held that no indictment therefor would lie in this State, but the Court so decided upon the express ground that *fornication* was the *offence,* which it was the design of the law to punish, and, as it appeared in that case, that this was perpetrated in another State, an indictment therefor could not be maintained in Maryland; and in *Neff vs. The State,* 57 *Md.,* 391, we said the offence is *consummated* by the birth of the illegitimate child. In *Mong and Stover vs. State, use of Flora,* 10 *G. & J.,* 380, it was held that the party who had maintained the child had the right to have process on his recognizance against the father to make him pay for its support, notwithstanding such party, and the child also, had never resided in this State from the date of the recognizance to the time of issuing the *scire facias* thereon. On this point we also refer to the cases of *Eccleston*

*vs. State of Maryland,* 7 *G. & J.,* 316, and *Robinson vs. State,* 68 *Md.,* 617.

It is true the precise question now before us arises for the first time in this Court; but the authorities cited clearly show that the offence which the law punishes is *fornication,* which term, as here used, means *unlawful sexual intercourse,* which results in begetting a child, and the consummation of which is established by the birth of the child. Now, if *such* illicit intercourse *occurs in this State,* and a child, *the result thereof,* is subsequently born, what matters it whether the child is born in this State or not? What has the *residence* of the mother at the time of its birth to do in such a case, when the *character of the punishment* inflicted upon the party who is duly convicted of being its father, has nothing whatever to do with *the offence* which the law denounces and *thus punishes?* The failure to notice this plain distinction between the character of the punishment and the offence punishable has given rise to expressions by the Court, in some instances, indicating that it was essential, to sustain an indictment in such cases, both that the child should be born in this State, and that the mother and child, or the latter, should *reside* in the State at the time the indictment is found. For this the strongest case, and the one mainly relied on by the appellant's counsel, is that of *Norwood vs. State,* 45 *Md.,* 68. But a careful examination of that case has convinced us, that the question now before the Court was neither considered nor definitely decided. It is true the Court considered the prayers on the question of residence offered by the traverser's counsel, but they rejected all of them, *because* they were not sustained by the evidence in the case and for other reasons. We cannot accept any casual expressions made by the Court, in its decision upon these prayers, as conclusive of the question here presented.

After the best consideration we are able to give to the subject, our opinion is, that the Court below was right

in overruling the demurrer, and convicting the traverser. The judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided 24th March, 1891.)