STATE *ex rel.* BERGE *v.* PATTERSON.

1. An action under Rev. Code Civ. Proc. § 807, by the mother of a bastard child against the father to compel him to support the child, is an action on a liability created by statute, other than a penalty or forfeiture, and is not barred by limitations in two years, but, under section 60, may be brought at any time within six years.

2. The defense of limitations cannot be raised by demurrer, but, under the express provisions of Rev. Code Civ. Proc. § 39, must be taken by answer.

3. Under Rev. Code Civ. Proc. § 807, giving the mother of a bastard child an action against the putative father to compel him to provide for the child's support, the father of a bastard begotten in this state is liable in the action for its support, though the child was born outside the state.

4. Where, in bastardy proceedings, defendant introduced a photograph of the child, it was not error to allow opposing counsel to call attention to the child itself, which was present in court without objection.

5. Rev. Code Civ. Proc. § 265, provides that, when the jury have agreed, they must be conducted into court, their names called by the clerk, and verdict rendered by the foreman; that, if any juror disagrees, they must be sent out again, but, if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete; and that either party may require the jury to be polled, which is done by the court or clerk asking each juror if it is his verdict. When a jury returned with a verdict for plaintiff, the judge and attorneys for both parties were present, but the clerk was not. The verdict was read by the court, and the jury asked by him if it was their verdict; neither party asking that the jury be polled, and no objection being made that the names of the jurors were not called, and that the verdict was received and read by the court instead of the clerk, until the next morning. Held, that as defendant was not prejudiced by the fact that the court acted in the absence of the clerk, and no specific objection was made at the time, judgment would not be reversed for the irregularity.

6. Under Rev. Code Civ. Proc. § 811, authorizing commitment to jail for refusal or neglect of a defendant in bastardy proceedings to give an undertaking for the payment of the money found to be due, the court is authorized, on a judgment against defendant, to commit him until compliance with the order as to the giving of an undertaking, though an undertaking had been given in the justice's court.

(Opinion filed June 30, 1904.)

Appeal from circuit court, Potter county; Hon. L. E. GAFFY, Judge.

Action by the state on relation of Anna T. Berge, against F. B. Patterson. From a judgment for plaintiff, defendant appeals. Affirmed.

*A. L. Ellis, Albert Gunderson* and *Murtha & O'Keefe*, for appellant.

*S. W. Cosand, S. M. Howard* and *R. B. Fisk*, for respondent.

FULLER, J. On the 1st day of October, 1901, and in the manner provided by section 807 of the Revised Code of Civil

Procedure, Anna T. Berge filed her sworn complaint with a justice of the peace as follows: "Anna Berge, being duly sworn, on oath complains and charges that the defendant, F.B. Patterson, at the said county of Potter, on the 20th day of May, A. D. 1898, did cohabit and have sexual intercourse with affiant, and that said cohabitation continued for several weeks, and that by said cohabitation with said defendant this plaintiff became pregnant with child, and that afterwards, to-wit, on the 11th day of February, 1899, this affiant was delivered of a bastard child, of which defendant was the father, and that this affiant was then and there an unmarried woman—against the peace and dignity of the state of South Dakota, and contrary to the form of the statutes in such case made and provided—and prays that the said F. B. Patterson may be arrested and dealt with according to law." Being held to the circuit court to answer the foregoing complaint, the defendant demurred thereto as follows: "First. That the complaint does not state facts sufficient to constitute a cause of action. Second. That the complaint does not state facts sufficient to charge an offense; that it appears upon the face of the complaint that the action is, and was at the time of the commencement thereof, barred by the statute of limitations."

This being "an action upon a liability created by statute, other than a penalty or forfeiture," there is no merit in the contention that the state is seeking to recover a forfeiture or penalty that is barred in two years by the statute of limitations. A civil action to enforce the moral, natural, and statutory obligation of the father to support his illegitimate child may be commenced at any time within six years, and section 60 of the Revised Code of Civil Procedure settles adversely to

the defendant this question urged in support of his demurrer. Moreover, the personal immunity afforded by the statute of limitations is not available on demurrer, and is waived unless properly asserted by way of answer. Section 39 of the Revised Code of Civil Procedure expressly provides that "the objection that the action was not commenced within the time limited can only be taken by answer." Meyer v. School District, 4 S. D. 420, 57 N. W. 68; McConnell v. Spicker, 15 S. D. 98, 87 N. W. 574.

The evidence, though conflicting in some material particulars, is sufficient to justify the jury in finding that the complainant was a domestic in the Patterson family at Gettysburg, in this state, from the middle of February, 1898, until about the 20th of July of that year, during which time she had frequent sexual intercourse with the defendant, and thereby became pregnant. Upon her condition being known, she was induced by the defendant to accompany his father to Pierre, with the expectation of being received into a home provided for unfortunate women. Learning that this institution had been discontinued, she was sent from Pierre to St. Paul, Minn., where her child was born on the 11th day of February, 1899, and she did not return to this state until September, 1901. It is contended by counsel for appellant that our statute has no application to a case where the child, though begotten in this state, is born in another state, and the trial court was wholly without jurisdiction to entertain the matter. The right to make such a complaint as the one before us is given by the statute to any unmarried woman who has given birth to a child which by law is deemed to be a bastard, and the object of the proceeding is not the imposition of a penalty, but to compel the putative father

to provide maintenance for his child, and thus secure the public against the necessity of doing so.   Section 807, supra; 5 Cyc. 645, and cases there collated.   The Legislature has made no distinction as to children born beyond the borders of South Dakota, and, when the mother makes sworn complaint before any justice of the peace of a county within this state where the alleged father may be found, the warrant of arrest must issue, and the accused be brought before such justice; and, if sufficient cause be shown upon examination, he must enter into an undertaking to appear and answer her complaint at the next term of the circuit court, and, upon his failure or refusal to thus bind himself, he is committed to the county jail to await trial.   In holding the father of an illegitimate child liable for its maintenance and support in a case exactly like this, and based upon a similar statute, the Wisconsin court say:   "The obligation of the father to support a bastard child grows out of the paternal relation existing between him and such child, and we therefore deem it quite immaterial, so far as his obligation and duty are concerned, whether the child is born out of the state or not. The object of the statute is to save the public from the burden of supporting illegitimate children, by compelling the father to provide for their maintenance.   It is the father's duty to support his children, legitimate or illegitimate; and, because he is likely to neglect it in the latter case, the law enforces the obligation by proceedings under bastardy acts.   This is the ground upon which these statutes are founded.   What difference can it make to any county or town in this state which is about to be burdened with the support of an illegitimate child whether the child was begotten and born in such county or town or in England or Germany?   If the father is within the

state, where he can be held amenable to our laws, and in a town or county where the child is likely to become a charge, it is right and proper that he should support his own offspring, and the law will compel him to do so.    The accident of the birthplace of such child ought not to be permitted to affect this general universal obligation growing out of the paternal relation." Duffies v. State, 7 Wis. 672.    From the case of Hodge v. Sawyer, 85 Me. 285, 27 Atl. 153, we quote as follows:    "The defendant is a resident of this state.    It would be unreasonable. to hold that he was not amenable to our laws because, from distress, the complainant sought shelter in her father's house, in another state—the only place for her to go, outside of the almshouse."    Whenever the courts have been called upon to construe statutory provisions similar to ours, they have held almost universally that any unmarried woman may make complaint against the father of her bastard child, without regard to the place where such child was born, and the following cases are to that effect:    Cooper v. State, 4 Blackf. 316;  Davis v. Carpenter, 172 Mass. 167, 51 N. E. 530;  McGary v. Bevington, 41 Ohio St. 280;  Sheay v. State, 74 Md. 52, 21 Atl. 607;  Moore v. State, 47 Kan. 772, 28 Pac. 1072, 17 L. R. A. 714;  Mings v. People,  111 Ill. 98.    With no qualification as to the place where the illegitimate child was begotton or born, our statute provides that "an unmarried woman who shall be pregnant or delivered of a child, which by law would be deemed a bastard," may institute the proceeding by making her complaint in any county of this state where "the person accused may be found," and we are not at liberty to pervert the legislative purpose by the interpolation of inconsistent descriptive phrases.

Although section 809, Rev. Code Civil Proc., found in the

bastardy act, declares that the only issue to be tried is whether the accused is the father of the child, and the rules of this court require the omission from the abstract of all that is useless and foreign to the questions to be decided on appeal, we have before us a purported abstract of nearly 400 pages, consisting largely of immaterial, far-fetched, and oft repeated testimony, in the form of questions and answers, together with the captious caviling of counsel, which invades the realms of speculation and serves to obscure the merits of the case. Without any reference in the brief of appellant to the folios in this anomalous abstract where the proof may be found, it is contended that the court erred in permitting the complainant to have her child on exhibition before the jury. and in allowing counsel to comment upon its alleged peculiarities. In view of the fact that counsel for the accused introduced a photograph of the child in evidence, and discussed the matter to the jury, it was not erroneous for opposing counsel to direct attention to the child, then nearly three years of age and in court without any objection. The question is therefore out of the case, and will not be decided, but we cite, without comment, the following cases to the point that "in bastardy proceeding it is competent for the state to make profert of the bastard child before the jury, for the purpose of showing its resemblance to the defendant." Kelly v. State, 133 Ala. 195, 32 South. 56, 91 Am. St. Rep. 25; State v. Saidell, 70 N. H. 174, 46 Atl. 1083; Crow v. Jordon, 49 Ohio St. 655, 32 N. E. 750; Gaunt v. State, 50 N. J. Law 490, 14 Atl. 600; Finnegan v. Dugan, 14 Allen 197; Scott v. Donovan, 153 Mass. 378, 26 N. E. 871; Stumm v. Hummel; 39 Iowa 478; Whar. Cr. Ev. 312.

A number of instructions based upon the mistaken belief

18 S. D.—17

that the action is not maintainable because the child was born in another state were requested by the defendant, and very properly refused by the court, and there is no merit in the contention that certain other instructions equivalent to the direction of a verdict in favor of the accused ought to have been given.

The court's charge to the jury, which was designed to be eminently fair and most favorable to the defense, covers everything in the requested instructions that the law of the case justified, and, while there may be some technical errors of law pertaining to immaterial questions of fact, they are of too little consequence to be substantially prejudicial. While the objections to the charge, as presented in the brief of counsel for appellant, suggest numerous errors of the most flagrant character, we find nothing in any of the instructions actually given or refused by the court that will justify a reversal.

Immediately upon the conclusion of the court's charge, and at the hour of 6 o'clock p. m. of the 28th day of October, 1902, the jury retired to their room for deliberation; and concerning what subsequently took place we quote as follows: ''During the evening of October 28, 1902, and about 8:30 p. m., the court, being informed that the jury had agreed upon a verdict, went to the courthouse to receive the same. There were then present in the courtroom the defendant, in person; the attorneys for defendant; S. W. Cosand, state's attorney of Potter county, South Dakota, representing the plaintiff; the judge of this court, Hon. Loring E Gaffy; and all the officers of the court, excepting the clerk. The clerk of the court was not present, but was absent, at the time the jury were brought into the courtroom by the bailiff, under order of the court, to deliver

their verdict. Then the jury returned into court with the following verdict, viz : 'We, the jury, find that the defendant is the father of the child, as he stands charged in the complaint.' The verdict was read by the court to the jury, and they were asked if it was their verdict, and to this all the jury replied that it was. The verdict was then received by the court, and by the court filed, and then and there the court indorsed the said verdict with his own hand as follows, to-wit: 'Dated Oct. 28th, 1902. Verdict received and filed by the court, in open court, in presence of the jury & defendant, in absence of the clerk. By the Court, Loring E. Gaffy, Judge.' The defendant at no time asked that the jury be polled, but the following proceedings were had, viz.: 'Mr. Gunderson: We except to the verdict and its receipt, and ask for a stay of sixty days for all purposes.' Stay of proceedings granted by the court, except the entry of judgment and taxation of costs. Whereupon court adjourned until October 29, 1902." When court convened on the following morning, counsel for the defendant objected for the first time to the recording of the verdict, and moved to set it aside, for the reason that the clerk was not present when the same was returned, and court was not in session; that the names of the jurors were not called when the verdict was de·livered, and that the court, instead of the clerk, received and read the same, and asked the members of the jury if it was their verdict; that, no clerk being present at the time of its reception by the court, neither party could poll the jury.

Section 265 of the Revised Code of Civil Procedure expressly provides that, regardless of·adjournments from time to time after a jury has retired for deliberation, court continues in session, and "open for every purpose connected with the

cause submitted to the jury, until a verdict is rendered or the jury dismissed," and section 266 is as follows: "When the jury have agreed upon their verdict, they must be conducted into court, their names called by the clerk, and the verdict rendered by their foreman.   The verdict must be in writing, signed by the foreman, and must be read by the clerk to the jury, and the inquiry made whether it is their verdict.   If any juror disagrees, they must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case. Either party may require the jury to be polled, which is done by the court or clerk asking each juror if it is his verdict."   It will thus be seen that court was in session, and that the parties, their attorneys, the judge, and all officers except the clerk were present, when, by order of court, the bailiff brought the jury in to deliver its verdict in open court, and that the court, in express terms, is authorized to poll the jury at the request of either party, but when, as in this case, "neither party requires the jury to be polled, the verdict is complete."   It affirmatively appearing that the defendant was in no manner prejudiced by the fact that the court, in the absence of its clerk, read and filed the verdict of the jury in open court, without a specific objection being made at the time, the judgment appealed from should not be reversed for such a trivial irregularity.

After adjudging that the defendant pay, at stated intervals, for the support, maintenance, and education of his child, a sum of money much less than the maximum amount provided by statute, and that he give such an undertaking as the law requires, it was inserted in the judgment that he be committed to jail, "there to remain until he shall comply with the order

of this court herein contained as to the giving of said undertaking, or until he be otherwise discharged by due process of law." It is urged by counsel for appellant that the order of commitment is unwarranted, under the statute, and that the defendant cannot be imprisoned upon default in giving the undertaking. According to the statute under which the defendant was tried and found to be the father of the child, commitment to the jail of the county is the remedy for a refusal or neglect upon his part "to give an undertaking with sufficient sureties, to be approved by the judge of said court, for the payment of such sums of money, which undertaking shall be made payable to the state of South Dakota and conditioned for the due and faithful payment of such yearly sum in quarterly installments to the clerk of the court." Section 811. The undertaking given in justice court having served its purpose, when the trial at the circuit was concluded, and the accused was adjudged to be the father of the child, it was necessary and incumbent upon the court to bind him then and there to the faithful performance of all that the judgment imposed. It is clearly within the power conferred upon the court to remand the accused to the custody of the sheriff until such an undertaking as the statute requires has been given and approved.

Without the aid of oral argument or a printed brief on the part of respondent, we have studiously examined every point argued by counsel for appellant, and are satisfied that he has had a fair and impartial trial. Finding the evidence sufficient, and no prejudicial error of law occurring at the trial, the judgment appealed from is affirmed.