## William H. Norwood vs. State of Maryland.

*Indictment under Art. 13 of the Code, on the charge of being the Father of an Illegitimate child—Insufficiency of the indictment—Pleadings—Demurrer to Indictment—Hearsay Evidence—Residence—Amendment of Pleadings.*

In an indictment under Art. 13 of the Code, charging a person with being the father of an illegitimate child, the preliminary proceedings before the justice of the peace form no part of the record.  Neither is it necessary that such proceedings should be set out in the indictment.

If there be a plea to the jurisdiction of the Court in a case of this character it is necessary to prove that there has been a judgment by the justice, and a recognizance entered into by the party for his appearance at Court, but neither the proceedings before the justice nor the recognizance form part of the record.

The indictment charged that W. H. N., late of Frederick county, on a day named "unlawfully did beget upon the body of M. E. N. a free white woman of said county, a female illegitimate child, of which said female illegitimate child, the said M. E. N. afterwards to wit on" (giving the day and year) "at the county aforesaid, was then and there delivered, and which said female illegitimate child was then and there born alive and is still living, to wit at the county aforesaid, to the great damage of the said M. E. N.," with the usual conclusion.  On demurrer, it was Held:

That this indictment in substance and form correctly charged the offence.

The proceedings before the justice need not show upon their face that the mother is a white woman, or that the child was born alive and is still living.  These are matters of proof before the justice.

The warrant issued by the justice for the apprehension of the alleged father was directed to "M. F. H. constable," without stating that he was a constable of Frederick County.  Held:

That as the party was present and denied the charge, and entered into a recognizance for his appearance at Court, it was immaterial whether the

warrant was directed to a constable of Frederick County or of any other County.

Case where evidence was treated as hearsay and excluded.

Question whether certain evidence touching residence of the mother and child was legally sufficient.

Residence is a matter involving the intention of the parties as well as his acts, and a party may be actually at one place for a considerable time while his residence is at a different place.

The *corpus delicti* must be proved beyond a reasonable doubt, but the fact of residence may be established by the weight of evidence.

If the residence of the mother and child in Frederick County was a *bona fide* legal residence at the time of the indictment and trial, it was sufficient.

Where amendments in pleading are necessary, the pleading which requires amendment should be prepared anew and filed, and the original pleading withdrawn from the case.

APPEAL from the Circuit Court for Frederick County.

The appellant in this case was indicted in the Circuit Court for Frederick County, for being the father of an illegitimate child. The proceedings were originated at the instance of the mother who appeared before a justice of the peace of said county on the 15th of April, 1875, and made oath that she was delivered of a female child on the 7th of September last past, and that the appellant was the father of said child. A warrant for the apprehension of the appellant was thereupon issued, directed to "Marshall F. Harding, constable," but it did not state that the officer was a constable of Frederick County, nor that the mother was a white woman or that the child was born alive. The appellant was summoned and appeared before the justice and pleaded not guilty, and on the 15th of April, 1875, he was adjudged guilty and required to give security to indemnify the County of Frederick from all charge that might arise for the maintenance of said child.

From this judgment he appealed, and entered into a recognizance for his appearance before the next Circuit Court for said county, at which term of said Court a presentment and the above mentioned indictment were found. The traverser demurred to the indictment for insufficiency for supposed errors in the proceedings before the justice, and the demurrer was overruled by the Court. A number of pleas and replications were afterwards filed and exceptions taken to the action of the Court below thereon, but the case would be unnecessarily encumbered by setting them out at length, as the character of those passed on sufficiently appear in the opinion of the Court.

The indictment charged that W. Herbert Norwood, late of said county, on the 7th day of December, eighteen hundred and seventy-three, at the county aforesaid, unlawfully, did beget upon the body of Mary E. Nusbaum, a free white woman of said county, a female illegitimate child, of which said female illegitimate child the said Mary E. Nusbaum, afterwards, to wit, on the 7th day of September, eighteen hundred and seventy-four, at the county aforesaid, was then and there delivered, and which said female illegitimate child was then and there born alive, and is still living, to wit, at the county aforesaid, to the great damage of the said Mary E. Nusbaum, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the state.

The case was tried below before the Court, (LYNCH, J.,) and the issues were decided in favor of the State, and judgment was entered accordingly. The traverser appealed. The facts are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and ALVEY, J.

Norwood *vs.* State.

*Wm. P. Maulsby, Jr.*, for the appellant.

*James McSherry* and *Attorney General Gwinn*, for the appellee.

GRASON, J., delivered the opinion of the Court.

Upon the demurrer to the pleas and replications filed in this case several questions are presented for our consideration. It was contended on the part of the appellant, that all the proceedings before the Justice of the Peace in cases of this character are part of the record, and therefore that any defects in them can be reached by a demurrer. The 13th Article of the Code does not require any of the proceedings before the Justice to be returned to the Circuit Court, except the recognizance of the party charged, where he feels himself aggrieved by the judgment of the Justice, and it would seem therefore that they form no part of the record. Neither is it necessary that such proceedings should be set out in the indictment, as the Code does not require it. See *Cushwa vs. The State*, 20 *Md.*, 281. The Court held in that case, that it had no jurisdiction of the case, because it appeared from the pleading in the cause, that there had been no judgment rendered by the Justice, and no recognizance entered into by the party for his appearance at the next succeeding term of the Circuit Court. In the case of *The State vs. Phelps*, 9 *Md.*, 26, the Court of Appeals did not decide whether or not the proceedings before the Justice formed part of the record, because it was not necessary to decide that question. That was a motion in arrest of judgment founded upon alleged defects in the proceedings before the Justice, and the Court said that whether the proceedings were part of the record or not, the motion in arrest could not be sustained, for if they formed part of the record, the party was bound under the Act of 1852, chap. 63, to take advantage of any defects in them by demurrer, and if they were not part of the record

defects in them could not be availed of by motion in arrest.    The Code provides that when a party feels himself aggrieved by the judgment, he may enter into a recognizance for his appearance at the succeeding term of the Circuit Court, which recognizance shall be returned to said Court, and that the proceedings shall then be such as are had in other criminal cases ; that is, there must be a presentment and indictment upon which the trial must proceed as in other criminal cases.    The object in requiring the party to enter into a recognizance for his appearance at the succeeding term of the Circuit Court, is the same as it is in requiring it from other parties charged with crime ; that is to prevent him from absconding, and to compel him to appear to answer such indictment as may be preferred against him by the grand jury.    If there be a plea to the jurisdiction of the Court in a case of this character, it is necessary to prove that there has been a judgment by the Justice, and a recognizance entered into by the party for his appearance at Court ; but it is clear that neither the proceedings before the Justice nor the recognizance for the party's appearance at Court form part of the record.    It follows, therefore, that the demurrer to the indictment and record reaches no further than to the indictment.    We have carefully examined the indictment, and find that in substance and form, it correctly charges the offence.    The demurrer to it was therefore properly overruled.

It was contended that inasmuch as the proceedings before the Justice did not show that the mother of the child was a white woman, or that the child was born alive and was still alive at the time of the judgment by the Justice, the Circuit Court had no jurisdiction of the case. As we have before said, the proceedings before the Justice form no part of the record, and need not show upon their face that the mother is a white woman, or that the child was born alive and was still living.    These are matters of proof before the Justice.    The indictment does however

Norwood *vs.* State.

charge, that the mother is a free white woman, and that the child was born alive, and was still living at the time of finding the indictment. The demurrer to the second replication to the pleas to the jurisdiction, were therefore properly overruled, and the State's demurrer to the third plea was properly sustained.

The objection taken to the ruling of the Circuit Court, in sustaining the demurrer to the fourth plea and the fourth amended plea, has been abandoned by the appellant's counsel, both in his brief and argument.

The demurrer to the replication to the fifth plea was properly overruled. The object in requiring the Justice to issue his warrant for the reputed father of the child, is to cause him to be brought before the Justice, in order to have jurisdiction of his person. The warrant for the appellant was directed to "Marshall F. Harding, constable" without saying "of Frederick County." It makes no difference whether the appellant was brought before the Justice by a constable of Frederick County, or of any other county of the State, or whether he appeared voluntarily. He was present, denied the charge, and entered into a recognizance for his appearance at Court, and this was sufficient.

The first bill of exceptions is taken to the ruling of the Court in not sustaining the demurrer to the indictment and record, and, if an exception can be properly taken to such a ruling, (a question which it is unnecessary to decide in this case,) it has been disposed of by what we have said upon the questions raised by the demurrer itself. The second bill of exceptions has been also disposed of by what has been said upon the demurrer to the replications to the pleas to the jurisdiction of the Court.

The third bill of exceptions was taken to the ruling of the Circuit Court, in refusing to permit the declaration of William Baker, with regard to Mary E. Nusbaum no longer having a home at his house, to be given in evidence.

William Baker was a competent witness to prove all the facts connected with her residence at his house, and with her removal from it, if in fact she had left it, and his unsworn declarations were clearly merely hearsay, and as such inadmissible. The fourth and last exception was taken to the rejection of the appellant's five prayers. The first prayer asked an instruction that there was no evidence legally sufficient to prove that the illegitimate child was a resident of Frederick County at the time of finding the indictment; the second prayer asked an instruction, that there was no evidence legally sufficient to prove that the mother of said child was a resident of said county, at said time; and the third, that there was no evidence legally sufficient to prove that the mother was a resident of said county, at the time of the trial.

The mother testified that she had lived with William Baker in Frederick County for six years before the birth of the child and eleven weeks afterwards, when she went to her father's house in Carroll County for a short time, leaving part of her effects at Baker's and taking part with her, and that she did not know how long or how short her stay at her father's house would be; that he had no other female about his house; that she had no place of permanent residence, but had gone from Carroll County to Frederick to attend the trial, and taken her child with her and left it at her brother's house in Frederick County. Her brother Isaiah Nusbaum testified, that his father was over seventy years old, and his wife had left him, and he got his sister Mary to go to his father's for a short time until they could make arrangements, but that he did not know how long or short her stay with her father would be. This evidence tended to prove that the residence of the mother and child was in Frederick County, and that they went to Carroll County for a special purpose, at the instance of Isaiah Nusbaum; that is, that Mary E. Nusbaum might be with her father, who was old and alone,

in order that she might attend to his house and minister to his wants, so long as her services might be required by him.

Residence is a matter involving the intention of the party as well as his acts, and a party may be actually at one place for a considerable time, while his residence is at a different place. The evidence of both these witnesses being uncontradicted, the mind of the Court, sitting as a jury, might have fairly and legitimately been brought to the conclusion that the residence of the mother and child was in Frederick County, and therefore the three first prayers were properly rejected.

The fourth prayer required the Court to find, beyond reasonable doubt, that the residence of the mother or child in Frederick County was *permanent* in its character. The fifth prayer also asks the Court to find, beyond reasonable doubt, that the mother or child had a *permanent* residence in Frederick County, and that the fact of the mother's actual residence in Carroll County was *prima facie* evidence of permanent residence in that County, which the State must rebut, and in the absence of rebutting evidence, clear beyond reasonable doubt, the appellant must be acquitted. These two prayers were properly rejected.

The *corpus delicti* must be found beyond reasonable doubt, but the fact of residence may be established by the weight of evidence, and the prayer was defective by asking too much. It also required the Court to find that the mother or child had a *permanent* residence in Frederick. If the residence was a *bona fide*, legal residence at the time of the indictment and trial it was sufficient. It was not at all necessary that it should continue for any length of time after the trial, nor is it possible for any one to say, how soon he himself, much less another, will remain a resident of a particular place or county. There are precisely the same objections to the fifth prayer as there are

Norwood *vs.* State.

to the fourth, and what we have said of the fourth applies with equal force to the fifth. Finding no error in the rulings of the Circuit Court, they will be affirmed, and the cause remanded, in order that the appellant may be required to enter into a recognizance for the support of the child, in accordance with the requirements of the Code.

We cannot forbear expressing our decided disapprobation of the loose manner in which the pleading in this case has been conducted. The different pleas seem to have been written on separate pieces of paper, and filed at different times, and it thus became necessary that the replications should be prepared and filed in the same manner, and consequently the pleadings are scattered through the record, rendering it difficult for the Court to determine the order in which they were filed, and the numbers by which they are designated. The record is also cumbered by pleadings which have been amended, form no part of the record, and ought to have been withdrawn from the case upon filing the amended pleas. The respective pleadings should be contained on the same paper and filed at one time, and if amendments are found to be necessary, the pleading which requires amendment, should be prepared anew and filed, and the original pleading withdrawn from the case. By pursuing this course difficulties and misunderstandings between counsel will be avoided, and much labor and inconvenience to the Court will be saved, and the usual rules of practice observed.

*Rulings affirmed, and*
*cause remanded.*