# STATE OF MARYLAND

*vs.*

# DUDLEY R. HARDESTY.

*Bastardy law : jurisdiction; criminal law. Appeals : thirty days from judgment or sentence.*

Under the broad provisions of the bastardy law, the jurisdiction of the father's residence and that of the child's domicile, within the limits of the State, are equally available for purposes of prosecution.          p 176

Under Rule 23 of the Court of Appeals, appeals in criminal cases are to be taken within 30 days from the date of the judgment or sentence.          p. 177

*Decided January 16th, 1918.*

Appeal from the Circuit Court for Prince George's County. (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Philip B. Perlman, Assistant Attorney General,* and *Albert C. Ritchie, the Attorney General* (with whom was *S. Marvin Peach, State's Attorney for Prince George's County,* on the brief), for the appellant.

*Wm. J. Neale* (with whom was *George B. Merrick* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The indictment in this case charges the appellee with having begotten on the body of the woman therein named, in St. Mary's County, a male bastard child, who was born in Baltimore City, the temporary residence of the mother, and is now living in Prince George's County, where the prosecution was instituted. A demurrer to the indictment was filed and sustained on the ground that, as the fornication was alleged to have been committed in St. Mary's County, the accused was subject to indictment only in that jurisdiction, where he resides. The appeal is from a judgment for the defendant on the demurrer.

The law of this State relating to bastardy and fornication, as amended by the Act of 1912, Chapter 163, and constituting Article 12 of the Code of Public General Laws, contains the following provisions affecting the question we are called upon to decide:

"2. Whenever any woman who has been delivered of or who is pregnant with a bastard child shall, in writing, under oath, accuse any person before a justice of the peace, having criminal jurisdiction, of being the father of the said bastard child, such justice of the peace shall by his warrant cause such person to be brought before him, and if the said accused person is not to be found in the county or City of Baltimore, as the case may be, then said justice of the peace shall transmit a warrant to the sheriff of the county or City of Baltimore, as the case may be, in which said accused person is to be found, who shall cause the arrest of the

said accused person and deliver him into custody of
an officer of the county or City of Baltimore, as the
case may be, from which the said warrant issued  to
be taken before said justice of the peace."

The two next succeeding sections direct the course of pro-
ceedings upon the appearance of the accused before the jus-
tice of the peace, including the passage of an order requiring
the accused "to give bond to the State of Maryland in a pen-
alty not exceeding $500, with good and sufficient securities,
conditioned that he will appear at the next term of the Cir-
cuit Court of the county from which said warrant issued, or
the Criminal Court of the City of Baltimore, as the case
may be, or to any later term of such Court, after the birth of
said child"; and section 5 provides:

"Immediately upon the passage of said order, said
justice of the peace shall transmit the original papers
and a transcript of the proceedings had before him to
said Circuit Court or the Criminal Court of the City
of Baltimore, as the case may be, and thereupon, but
not before said woman shall have been delivered, the
same proceedings shall be had as in other criminal
cases, and if the accused person shall be found guilty
by the verdict of a jury, or by the court, if the case be
tried before the court, the court shall immediately
order such person to give bond to the State of Mary-
land in a penalty not exceeding $500, with good and
sufficient securities, conditioned to pay for the mainte-
nance and support of said child, to the mother, or to
the person having said child in custody, or to the
county or to the City of Baltimore, as the case may be,
if the said child be a public charge, until said child
reaches the age of 12 years, * * * such sum, not exceed-
ing $15 per month, as the court shall by order direct,
* * * * ."

In the law as it stood prior to the enactment of the amend-
ing statute from which we have quoted it was provided that

the putative father of the illegitimate child should be proceeded against as such in the county or city of his residence. Code 1911, secs. 2 and 3. The elimination of this provision was one of the important changes effected by the Act of 1912. Neither the pre-existing nor the present statute has required the prosecution of the putative father to be conducted in the county where the fornication resulting in the illegitimate birth was committed. It is true that the fornication, having such a result, is the offense against which the proceeding is directed. While that offense, in the view of the statute, is not consummated until the birth of the child, yet it is the fornication which the law is designed to punish by the exaction of the prescribed bond of indemnity, or by imprisonment in default of compliance with that requirement. *Sheay* v. *State,* 74 Md. 52; *Lynn* v. *State,* 84 Md. 80; *Neff* v. *State,* 57 Md. 391; *Allen* v. *State,* 128 Md. 266; *Jones* v. *State, ante,* p. 142. It was accordingly held in *Sheay* v. *State, supra,* that the father of an illegitimate child begotten in Maryland but born in Pennsylvania was liable to prosecution in the county of his residence in this State under the bastardy law then in force. But it was not then, nor is it now, provided that the prosecution must be in the county or city where the fornication occurred. It was in the jurisdiction of the putative father's residence, though the act to be punished may have been committed elsewhere in the State, that the proceeding was to be instituted under the former law. In repealing that provision the new statute has substituted no equivalent restriction as to the place where such a prosecution shall originate. The mother of the illegitimate child may now accuse the father "before a justice of the peace having criminal jurisdiction," who is authorized and directed to cause the accused to be arrested on a warrant to the sheriff of the county "where he is to be found," and to be brought before the justice for the preliminary proceedings specified in the statute, and for subsequent indictment and trial in the same county in which the warrant was issued. The defend-

ant in such a case is, therefore, not entitled to defeat the prosecution merely upon the ground that it was not begun in the county where he resides and where the alleged offense was committed.

While the bastardy law is punitive in its nature, one of the main objects it has in view is to require the father of the illegitimate child to give security to its mother or custodian for its maintenance and support and to indemnify the public against such an obligation. The bond into which the father enters is in terms for the benefit of any person by whom the child is being maintained, or of the county, or the City of Baltimore, as the case may be, if the child should be a public charge. *Robinson* v. *State,* 68 Md. 619; *Sheay* v. *State, supra;* Code, Article 12, section 5. For the purposes of a prosecution having such an indemnity as its object, the county where the child is actually living and being supported affords an appropriate and clearly competent jurisdiction, under the terms of the statute, within which to conduct the proceeding.

While the law does not require, yet neither does it prevent, the preferment and trial of a charge like the present in the county where the accused resides; and, on the other hand, while the statute permits, it does not direct the proceeding to be inaugurated in the county where the child is being maintained. Under the broad provisions of the law, in its existing form, the jurisdiction of the alleged father's residence, and that of the child's domicile, within the limits of the State, are equally available for such a prosecution.

As we are of the opinion that the indictment was not demurrable, the judgment for the defendant on the demurrer would be reversed if the case were properly before us on appeal. But it appears from the record that the judgment was entered on June 15, 1917, and that the appeal was not taken until August 13, 1917. There was thus an interval of nearly two months between the dates of the judgment and of the appeal. By Rule 23 of this Court, relating to appeals,

it is provided that in criminal cases an appeal or writ of error allowed by law shall be taken within thirty days from the date of judgment or sentence. This rule requires that the present appeal be dismissed. There is no inconsistency between the rule, which became effective January 1, 1909, and the pre-existing Act of 1892, Chapter 506 (Code, Article 5, section 80), which provides that "appeals from judgments in criminal cases may be taken in the same manner as in civil cases." The statute refers specifically to the *manner* and not to the *time* of taking the appeals, and hence does not apply to criminal cases the larger time limit within which appeals in civil cases may be entered. But while it is our conceded duty to dismiss the appeal, the *Attorney General* has urged the Court to render its opinion on the question raised by the record, as it is one of practical importance in cases of this nature. The conclusion we have reached upon the subject has been stated in compliance with that request.

*Appeal dismissed.*