## KISNER *v.* STATE

[No. 139, October Term, 1955.]

*Decided April 9, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*I. Sewell Lamdin*, with whom were *Thomas L. Sampson* and *Lewis R. Jones* on the brief, for the appellant.

*David Kauffman, Assistant Attorney General*, with whom were *C. Ferdinand Sybert, Attorney General*, and *Stephen R. Pagenhardt, State's Attorney for Garrett County*, on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, a resident of Baltimore County, was indicted by the Grand Jury of Garrett County on September 15, 1954 for fathering twin illegitimate children, born in that County on August 1, 1954. He was arraigned on September 27, 1954 and pleaded not guilty, and at that time filed a petition in which he denied paternity and asked the court to require a blood test of him, the mother and the twins, as provided by Code, 1951, Art. 12, Sec. 17. The court ordered the tests, which were made and proved inconclusive. In March, 1955, appellant asked for and was granted a continuance. When the case came to trial on September 26, 1955, the appellant filed a motion to dismiss on the ground that he was a resident of Baltimore County and the prosecutrix a resident of West Virginia, so that the court lacked jurisdiction. The motion to dismiss was overruled. The defendant went to trial, and in spite of an active defense, was convicted by the jury. He appeals from the judgment and sentence which followed.

The appellant says that the Circuit Court for Garrett County was without jurisdiction to try him because a prosecution for bastardy must be brought either at the residence of the alleged father or at the domicile of the

child, which, it is argued, is that of the mother, if the child lives with her. The State contends that the mother and the twins were residents of Garrett County when the indictment was found and, if they were not, that County had jurisdiction because the consummation of the offense, the birth of the children, occurred there, and finally that, in any event, the court had jurisdiction of the subject matter, the crime of bastardy, and the right of the appellant to be tried elsewhere (if he had that right) was a matter of venue, or jurisdiction of the person, which could be waived by him and which was in fact waived by his general appearance and submission to the jurisdiction before he raised the right of the court to try him. We think the State is right in its last contention.

Bastardy is treated as a civil proceeding in some States and as criminal or quasi-criminal in others. In Maryland it has been held to be criminal, although acknowledged to be civil in purpose. In *Kennard v. State,* 177 Md. 549, it was said that technically bastardy is not a criminal proceeding but one that had many of the elements and incidents of such a proceeding, and should be treated as a misdemeanor. We treat it as criminal in considering the problems in the appeal before us.

There is nothing new or startling in the proposition that although jurisdiction of the subject matter cannot be conferred by consent, venue or jurisdiction of the person may be waived in a criminal case. The Sixth Amendment of the Constitution of the United States provides, as to offenses against the United States: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *." The constitutions of many of the states or their statutes, or both, contain similar provisions. The great weight of authority is that these constitutional and statutory provisions afford a personal privilege to an accused that he may, and does, waive, by a general appearance or failure to make timely objections to the court's jurisdiction of his person. An annotation in 137 A. L. R.

687, on the question of whether an accused may waive his right to have his trial take place in the county or district in which the offense was or is alleged to have been committed, concludes: "The courts have uniformly taken the view that an accused's right as to place of trial, arising under a constitutional provision expressly granting or guaranteeing to persons accused of crime the right to be tried in, or by a jury of, the county or district in which the offense was committed or is alleged to have been committed, may be waived." The cases support this conclusion. 34 Cornell Law Quarterly 129, 139. See also 14 Am. Jur., *Criminal Law*, Sec. 233, p. 930, and same section in the 1955 Supp.; 22 C. J. S., *Criminal Law*, Sec. 176, p. 266-7, and Sec. 161, p. 257-9. In *Brown v. State* (Ind.), 37 N. E. 2d 73, the Court held that the constitutional right to be tried in the county in which the offense was committed is a personal privilege which may be waived, reasoning that if this were not so, there could be no change in venue at the instance of the accused, no waiver of a jury trial or of the right to counsel or other constitutional guarantees or, indeed, the right to plead guilty and so waive trial. In the *Brown* case, the charge was rape, said by the State to have been committed in one county and by the accused in another. The Court said: "Appellant's only question is as to which of two courts of general jurisdiction should try the case. This question does not involve the jurisdiction of the subject matter, but only the place of trial, a question of venue. The right to have the case tried in a certain county, as guaranteed by the constitution and statute, was a right personal to the appellant, which he could waive and which * * * he is deemed to have waived by not having made an appropriate objection in the trial court." Other late State cases, which have agreed, include: *Lockhart v. Smith* (Iowa), 43 N. W. 2d 541; *State v. Langford* (S. C.), 73 S. E. 2d 854; *State v. Page* (Mo.), 186 S. W. 2d 503, 507; *Application of Poston* (Okla.), 281 P. 2d 776; *State v. Raible* (Ohio), 117 N. E. 2d 480; *State v. Hardamon* (Wash.), 186 P. 2d 634. It has been held by the

Courts of several Federal circuits that the constitutional right to trial at the place of the commission of the crime granted by the Sixth Amendment to the Federal Constitution may be waived. *Hagner v. United States* (D. C.), 54 F. 2d 446; *Mahaffey v. Hudspeth*, 10th Cir., 128 F. 2d 940; *United States v. Jones*, 2nd Cir., 162 F. 2d 72, 73; *United States v. Bushwick Mills*, 2nd Cir., 165 F. 2d 198. Rule 20 of the Federal Rules of Criminal Procedure provides that if an accused so elects, he may plead guilty or *nolo contendere* in the district in which he is arrested, although the crime was committed in another district. The validity of the rule has been upheld. *United States v. Gallagher*, 183 F. 2d 342, *cert. den.* 340 U. S. 913; *Levine v. United States*, 182 F. 2d 556, *cert. den.* 340 U. S. 921.

At common law criminal offenses were tried by a jury of the county where the offense was committed. 4 *Blackstone's Commentaries* 303. When an accused chose not to be tried by ordeal or by battle, but by his country, he chose to be tried by a jury of the county in which the offense with which he was charged had been committed. Nevertheless, the Court of King's Bench had the power of directing that the trial was to take place before a jury from an adjoining county when justice required it. *Price v. The State*, 8 Gill 296, 306-311. The practice of trying those accused of crime in the county of the commission of the offense was not general in Maryland in early times. At first the Provincial Court tried many criminal cases, no matter where the crime was committed. After the adoption of the Constitution of 1776, the General Court, one branch sitting in Annapolis, the other on the Eastern Shore, tried crimes wherever occurring. By various statutory enactments criminal jurisdiction was transferred to the County Courts. For example, by the Acts of 1785, Chap. 87, Sec. 7, it was provided that except in cases particularly directed to be tried in the General Court, the justices of the respective County Courts should have full power and authority: "to try, according to law, all and every person and persons who have committed or shall commit any offense or crime whatsoever * * *" and

upon conviction, "* * * in due course of law, in the county court of the county in which the crime or offense shall be committed, give judgment according to the nature and quality of the crime or offense." By the Act of 1790, Chap. 50, the jurisdiction of the General Court in criminal cases was limited and the judges of that court for the Western or Eastern Shore were made incapable of taking cognizance of, and jurisdiction over, "any offenses, crimes or misdemeanors whatsoever, except treasons, misprisions of treason, murders, felonies and insurrections;" and all other offenses, crimes and misdemeanors were to be heard and determined by the County Court "of the county wherein the said offenses, crimes and misdemeanors, shall be committed, and not elsewhere, except in the cases herein before excepted." In 1805, by constitutional amendment, the General Court was abolished and its appellate jurisdiction transferred to the Court of Appeals and its original jurisdiction to the respective County Courts which were grouped into districts. See the Acts of 1805, Chap. 65, for the legislation carrying into effect this change. The County Courts thus became courts of general jurisdiction exercising all of the powers of the Court of King's Bench. In the Constitution of 1851, there was conferred on the circuit court of each county all of the jurisdiction then had or exercised by the County Courts "or which may hereafter be prescribed by law". The Constitutions of 1864 and 1867 contained similar language. See *Price v. State,* 8 Gill 296, *supra; Biscoe v. State,* 68 Md. 294. Since the passage of Ch. 163 of the Acts of 1912—Code, 1951, Art. 12—the Circuit Courts have had original jurisdiction of bastardy proceedings. *O'Brien v. State,* 126 Md. 270; *Kelly v. State,* 151 Md. 87. The Constitution of 1776 did not require and succeeding Maryland Constitutions have not required that the trial of an accused take place in the county where the crime was committed. In states that have such constitutional requirements, it has been held that the right to change of venue may be exercised only by the accused and not by the State, since the privilege of the place of trial is per-

sonal to the accused. In Maryland, however, it is held that the State as well as the accused may have a change of venue in a proper case. *McMillan v. State*, 68 Md. 307. Statutory provisions on the question of the jurisdiction of the courts are sparse. Code, 1951, Art. 26, Sec. 40, provides as follows: "The circuit courts for the several counties are the highest common law courts of record and original jurisdiction within this State, and each has full common law powers and jurisdiction in all civil and criminal cases within its county (except where by law the jurisdiction has been taken away or conferred upon another tribunal) ; and all the additional powers and jurisdiction given by the constitution and by law." Code, 1951, and 1955 Supp., Art. 75, Sec. 109, implements the constitutional provision as to the removal of causes, and provides that when the prerequisites to removal exist, the court shall order the transmission of the case "to some other court having jurisdiction in such case for trial." The quoted language would seem to refer to jurisdiction of the subject matter. There are other statutory provisions that lend support to the concept that the common law necessity for trial in the county of the commission of the crime is not a fundamental right or requirement. For example, Code, 1951, Art. 27, Sec. 676, provides that any one who commits a crime on a public conveyance within the State may be indicted and tried in any county through which the conveyance runs. Sec. 144 of Art. 27 is similar. It goes even further in providing that the offender may be tried before a court "* * * having jurisdiction of similar crimes * * *" in any county in which he may be found after the crime. Any person who commits a crime on the waters of the Chesapeake Bay within the limits of the State and without the boundary of any county, may be indicted and tried in the county in which he may be arrested or into which he may first be brought, under Sec. 675 of Art. 27. Certain offences against the conservation laws committed on the Chesapeake Bay may be tried in any of the "Tidewater Counties". Sec. 665 of Art. 66 C, Code, 1951. Sec. 677 of Art. 27 provides that

any person who may commit any crimes, felony or misdemeanor, on or at the boundary or divisional line between any of the counties in this State, or so near thereto that the exact location of such boundary is so uncertain as to make it doubtful in which county the offense was committed, may be indicted, tried and convicted in the first county to assume jurisdiction, and it shall only be necessary for the State to establish the venue as near a boundary line and uncertain. See *Biscoe v. State,* 68 Md. 294, *supra; Barnes v. State,* 186 Md. 287. Bastardy proceedings are clear examples of those in which venue is transitory. The Maryland statute and the decisions make it plain that an accused may be tried in any one of a number of counties. Code, 1951, Art. 12, Sec. 2, permits a woman to accuse a man of being the father of her illegitimate child before "a justice of the peace, having criminal jurisdiction". Sec. 5 of Art. 12 permits a woman to make the charge before "a state's attorney" who, after the child has been delivered, files the information in the court of the county in which he serves. There is no requirement in the statute that the charge must be preferred and the prosecution had in any particular county. Similar statutes have been read to mean that the prosecution could be brought in any county of the State. *Ex parte Bolman* (Kan.), 292 P. 790. See also *State v. Tetreault* (N. H.), 85 A. 2d 386; *Davis v. District of Columbia,* 102 A. 2d 842. In *State v. Hardesty,* 132 Md. 172, the Court pointed out that prior to the amendment of the bastardy law in 1912, the putative father was to be proceeded against in the county or city of his residence. The Court said: "In repealing that provision the new statute has substituted no equivalent restriction as to the place where such a prosecution shall originate. The mother of the illegitimate child may now accuse the father 'before a justice of the peace having criminal jurisdiction,' who is authorized and directed to cause the accused to be arrested on a warrant to the sheriff of the county 'where he is to be found,' and to be brought before the justice for the preliminary proceedings specified in the statute, and for sub-

sequent indictment and trial in the same county in which the warrant was issued. The defendant is in such case, therefore, not entitled to defeat the prosecution merely upon the ground that it was not begun in the county where he resides and where the alleged offense was committed." The Court held that in view of the purposes of the statute to indemnify the public against supporting the child, the county where the child is born, was an appropriate and competent jurisdiction in which to conduct the proceedings. It was held that the statute permitted, but did not require, prosecution either where the alleged father lived or where the child lived. In *Klein v. State,* 151 Md. 484, it is said that the *Hardesty* case held that the county in which the fornication occurred also had jurisdiction. The Maryland annotation to *Restatement, Conflict of Laws,* Sec. 456, prepared by Prof. Reiblich of the U. of Md. Law School, after referring to *State v. Hardesty, supra,* and *Klein v. State, supra,* concludes: "The wording of Code, 1951, Art. 12, Sec. 2, would seem broad enough to allow jurisdiction in the court of any county getting personal jurisdiction of the defendant."

In States which have not said that bastardy proceedings may be brought in any county, it has been held that proceedings may be instituted in the county where the father resides, or where the mother resides, or the county in which the child is likely to become a charge or where the fornication takes place or where the birth of the child took place. 10 C. J. S., *Bastards,* Sec. 57. *Robinson v. State,* 68 Md. 618, approved an indictment that did not allege the residence of the mother, but did allege that the child was born in the county. In *Norwood v. State,* 45 Md. 68, an instruction was requested that it must be found beyond a reasonable doubt that the residence of the mother or child in the county was permanent, and it was held that the prayer asked too much. The Court said: "If the residence was a *bona fide,* legal residence at the time of the indictment and trial it was sufficient. It was not at all necessary that it should continue for any length of time after the trial * * *." In the case before us the

evidence was that the mother had gone to live with her aunt in Garrett County in July, 1954, and had continued to live there with the children after they were born until the last of November. The indictment was returned in September, 1954. The children were born in Garrett County. It has been held that the birth is the consummation of the crime. *Neff v. State,* 57 Md. 385. We do not deem it necessary to decide whether any of these facts would have been enough to give Garrett County the right to try the appellant if he had made proper and timely objection to the venue finding, as we do, that he waived the right to object.

The cases clearly establish that in a civil proceeding, a general appearance waives the right to object to venue and the courts, in deciding similar questions in criminal cases, have adopted the same reasoning and reached the same result. In *Ireton v. Baltimore,* 61 Md. 432, there was a motion to quash the proceedings on the ground that the City of Baltimore could not be sued in Baltimore County. The City Solicitor had entered a general appearance. It was held that since the court had jurisdiction of the subject matter, the general appearance waived the right to challenge the venue. *Colt Co. v. Wright,* 162 Md. 387, held that the code provisions exempting one from suit out of the county of his residence confers upon him a privilege which he waives by appearing in another county without objecting to venue. See also *Howell v. Beth.- Sp. Pt. Shipyard,* 190 Md. 704, 709; *Alcarese v. Stinger,* 197 Md. 236; *Cole v. Randall Park Holding Co.,* 201 Md. 616, 625; and *Fairfax Forrest Co. v. Chambers,* 75 Md. 604, 614. Code, 1951, Art. 27, Sec. 692, gives evidence not only that the subject matter of a criminal proceeding is the essential test of jurisdiction, but that venue is waivable in a criminal case. It provides that: "No indictment or presentment for felony or misdemeanor shall be quashed, nor shall any judgment * * *, whether after verdict, by confession or otherwise, be stayed or reversed for the want of a proper or perfect venue, when the court shall appear by the indictment, inquisition or presentment

* * * to have jurisdiction over the offense * * * nor for any matter or cause which might have been a subject of demurrer to the indictment, inquisition or presentment." In *Bonneville v. State,* 206 Md. 302, it was held that Rule 3 and Rule 9 of the Criminal Rules of Practice and Procedure of the Court of Appeals substituted a motion to dismiss for the demurrer referred to in Sec. 692, amending the statute to this extent. The section is considered in *Wedge v. State,* 12 Md. 232. In *State v. Oliver* (N. C.), 119 S. E. 370, it was held that the common law rule entitling defendant to acquittal if not tried where the crime was committed, was changed by a statute providing that it shall be taken as true that the crime was committed in the county in which it is alleged to have taken place unless the defendant denies this by a plea in abatement. Rule 3 (b) (2) of the Criminal Rules provides: "Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." Rule 3 was taken from the Federal rules. It has been held in Federal cases that the defense of improper venue is to be interposed by a motion to dismiss, but that this must be done before pleading. *Barron and Holtzoff, Federal Practice & Procedure,* Sec. 354. Timely objection to venue is one interposed no later than the first pleading or motion. *Fallbrook Pub. Utility Dist. v. U. S. Dist. Ct., So. Dist. of Cal., So. Div.,* C. A. 9th, 202 F. 2d 942. See also *Cagnina v. United States,* 223 F. 2d 149, 154; *Pon v. United States,* 168 F. 2d 373. In *United States v. Lloyd,* 23 F. 2d 858, it was held that under ordinary circumstances, one who desires to object to the jurisdiction of the court over his person, must appear before the court for that purpose only, and if he

makes a general appearance, he waives his objection. "One who pleads to the indictment, or makes motions to suppress the evidence or to quash the indictment, has submitted to the jurisdiction of the court in the ordinary case." The state courts hold the same thing. Venue is admitted in North Carolina unless a plea in abatement challenges it. *State v. Oliver* (N. C.), 119 S. E. 370, *supra,* held that the plea in abatement must be filed not later than the arraignment, and where a defendant moved for a general continuance, he submitted to the jurisdiction of the court and waived the right to file a plea in abatement challenging the venue. In *State v. Raible* (Ohio), 117 N. E. 2d 480, a bastardy case, Raible failed to object to the territorial jurisdiction of the justice of the peace, and in the trial court made a request for blood tests. It was held that he had waived his right to challenge the venue. In *Myuskovich v. State ex rel. Osborn* (Wyo.), 141 P. 2d 540, 543, a bastardy case, the accused made a general appearance, gave bail, and obtained a continuance. It was held that the court had jurisdiction of the subject matter and that venue had been waived by the general appearance, the bail and the continuance. See also *State v. Langford* (S. C.), 73 S. E. 2d 854, hereinbefore referred to. In *Cooper v. State,* 64 Md. 40, this Court held that after one has pleaded in bar to a charge of felony, it is too late to plead in abatement, unless the court, as a matter of its favor or discretion, permits the withdrawal of the plea of not guilty and the filing of the plea in abatement. The holding was followed in *Mills v. State,* 76 Md. 274, 278, and *Pontier v. State,* 107 Md. 384.

In the case before us the appellant was tried and convicted in a court of general jurisdiction, having the right to try the offense with which he was charged. He not only entered a general appearance but sought the affirmative aid of the court in obtaining the blood tests, and obtained a continuance. Not until a year had passed and the case was called for trial, did he make an effort to challenge the venue. We think the effort came too late

and that his prior actions had waived the personal privilege of trial elsewhere, if indeed the statute gave him that privilege.

*Judgment affirmed, with costs.*