# JOHN J. McBURNEY *v.* STATE OF MARYLAND

[No. 121, September Term, 1976.]

*Decided March 23, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*James E. Kenkel,* with whom were *DePaul, Willoner & Kenkel, P.A.* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The Grand Jury for Prince George's County returned an indictment against John J. McBurney, an attorney at law, presenting that he committed six offenses in that county. At a court trial in the Circuit Court for Prince George's County McBurney was found guilty under the second and third counts of the indictment, charging that he had violated the provisions of Maryland Code (1957, 1968 Repl. Vol., 1975 Cum. Supp.) Art. 10, § 44 concerning escrow funds of attorneys.[1] He was sentenced to imprisonment for one year on each conviction, the sentences to run concurrently, and directed to pay the costs. An appeal was noted to the Court of Special Appeals. We issued a writ of certiorari before decision by that court.

## I

The facts surrounding the indictment of McBurney are not disputed in material part.[2] The Washington Suburban

---

1. McBurney was found not guilty under the first count (misappropriation of funds as a fiduciary) and the fourth count (larceny after trust). The docket entries indicate that a *nolle prosequi* was entered as to the fifth count (false pretenses) and the sixth count (attempted false pretenses) after the trial commenced.

2. McBurney's brief contains an "Agreed Statement of Facts." The State accepted that Statement "except as supplemented in the argument" in its brief.

Sanitary Commission (WSSC) and the O'Connor Construction Company, Inc. (O'Connor) entered into a contract calling for O'Connor to install water and sewer lines to service a residential construction project for twenty-four homes being built by a Delaware corporation in Saddle Ridge near Potomac, Montgomery County. When the Delaware corporation failed to supply WSSC with required data, WSSC told O'Connor to cease work and move off the site. The holder of the construction loan on the project, Cameron-Brown Company (Cameron), located in North Carolina, bought in the property on foreclosure and assumed the rights of the sewer permits. Cameron and O'Connor agreed that if O'Connor would complete the installation of the water and sewer lines, Cameron would pay O'Connor $8,000 for the costs of suspending and then resuming the work, and $12,000 for costs of increased labor and materials. Pursuant to the agreement, Cameron sent its check for $8,000 to McBurney, as O'Connor's attorney, at his office in Oxon Hill, Prince George's County, with a cover letter authorizing him to release the funds to O'Connor when O'Connor began construction, which was defined in the letter as "the day when substantial materials, equipment, and workmen are on the job and work is proceeding in a manner expected for a job of this magnitude." It was for McBurney to determine when construction had begun as defined. McBurney acknowledged receipt of the funds by letter dated 5 February 1975 and promised to comply with the agreement.

McBurney had lived in Silver Spring, Montgomery County, since March 1973. He spent a substantial amount of time working on his law practice from his residence. The Statement of Facts reads: "He would frequently dictate legal work into a cassette recorder and maintain regular contact with his office by telephone. He was often away from his office for periods of time as long as an entire week." [3]

---

3. The evidence with respect to the conduct of McBurney's practice was adduced from his testimony. His testimony is not included in the record extract, but the transcript of the proceedings indicated that half his time was spent in labor law "and as such I do not have a fixed schedule. I take files with me as a rule, every night. I always carry a black briefcase. . . . I

McBurney held the $8,000 check in his briefcase for about a week. He then deposited it in a checking account in his name maintained at the Silver Spring Branch of the Maryland National Bank. The account was opened 12 November 1974 and closed 5 March 1976. It was not an account maintained solely for escrow funds of his clients. The monies in that account were used for other things, for example, his secretary's salary and other office expenses of various kinds.

O'Connor moved back on the job site in February 1975 and was told by WSSC that work could begin on 4 March. On 15 April WSSC issued a check to O'Connor in payment for work on the project completed 6 March. The project was substantially completed by 24 December 1975.[4]

On 4 March 1975 while McBurney was on a business trip in Nevada he had a telephone conversation with John T. O'Connor (Tim), president of the O'Connor Construction Company, regarding the release of the $8,000. McBurney asked for a loan of the funds to be used by the mother of one of his secretaries for payment of an insurance premium on the mother's business, the Searchers Detective Agency. According to Tim, he told McBurney that he could not help him because he was in a bind himself and needed the money. McBurney's version was that the matter was left "up in the air" and that Tim said they would discuss it when McBurney returned. Six days later McBurney and Tim met en route to an unrelated hearing, and discussed the $8,000. McBurney testified that although he understood O'Connor needed the money, he had impressed Tim "that he was just as desperate to solve someone else's problems and that it was his impression that he could go ahead and write the check as previously discussed." On 11 March 1975, McBurney, in Silver Spring, issued a check in the amount of $7,500 drawn against his Maryland National Bank account, payable to

bring my mail home, as a rule, at night because there can be times for a whole week when I'm not in my office, I'm only in contact with them by the phone."

4. Cameron paid O'Connor directly the $12,000 for increased labor and materials. It was paid as agreed on a pro-rated basis over a period of a year based upon inspection reports received from the WSSC.

Searchers Detective Agency, noting on the face of the check "loan". The Agency was located in Silver Spring directly across from his residence, and he personally delivered the check to the Agency there. The issuance of the check reduced the balance in McBurney's account to less than $8,000.

O'Connor was paid $8,000 plus $1,000 as interest a little over a year later, on 23 March 1976, following a meeting several days before at which Tim and his brother and two attorneys for McBurney were present. One of McBurney's attorneys testified that at the meeting he asked Tim whether McBurney had been authorized to use the money as a loan to the Agency. According to the attorney, Tim replied: "No, that never happened that way. I never meant to make him a loan. But, if you take it in context, what we said and how we said it, I think he could have taken it that way." The attorney further testified that with reference to a conversation between McBurney and Tim about the $8,000, Tim said "at first I was pretty strong about I didn't want to lend him any money, and then I relented and I guess he could have thought it was okay to use the money, he could have thought it was a loan." Tim denied telling the attorney that McBurney could have construed from what was said between Tim and McBurney that approval was given to make the loan or use the money. As a result of the payment of $9,000 O'Connor executed a release discharging McBurney from any claims and requesting that any proceeding initiated against him be dismissed, "all matters having been completely resolved."

## II

As we have indicated, the crimes of which McBurney was convicted are proscribed by Maryland Code (1957, 1968 Repl. Vol., 1975 Cum.Supp.) Art. 10, § 44. Subsection (a) deals with the conduct of an attorney with respect to moneys entrusted to him. It requires that he deposit the moneys "expeditiously" in an account maintained as a separate account for funds belonging to others in the absence of written instructions or court order to the contrary. It prohibits him from (1) commingling such funds with his

own, and (2) using them for any purpose other than the purpose for which they were entrusted to him. Subsections (b) and (c) provide sanctions. An attorney who "wilfully" violates the provisions of subsection (a) shall be proceeded against under applicable laws and rules for reprimand, suspension or disbarment, subsection (b), and in addition, be guilty of a misdemeanor, and on conviction be fined or imprisoned or both, as therein set out, subsection (c).

Counts two and three of the indictment charged that McBurney, "an attorney entrusted with trust monies over the value of [$100]" had violated the prohibitive provisions of Art. 10, § 44. The second count presented that on or about 4 March 1975, "at Prince George's County", he "did use those monies for purposes other than the purpose for which such funds were entrusted to him." The third count identified the funds as the "property of O'Connor Construction Co.", and presented that between 31 January 1975 and 30 July 1975, "at Prince George's County," he "did co-mingle those funds with his own."

McBurney filed a pretrial motion to dismiss each count of the indictment because of improper venue. His point was that the counts allege that "the acts necessary for the consummation of the crimes described therein were performed by [him] in Prince George's County, whereas, in truth of fact, any acts by [him] which the State alleges constitute criminal conduct took place entirely outside of Prince George's County and within the confines of Montgomery County." He asserted: "The Prince George's County Grand Jury has no authority to investigate and indict for crimes committed outside the body of their County." He urged that requiring him to proceed on an indictment returned by a Grand Jury without authority denied him his right to due process and equal protection of law. The State opposed the motion on the ground that by the nature of the crimes they were committed in both counties so that "venue lies equally in Prince George's County."

At a hearing on the motion to dismiss, the State made a proffer of the evidence it intended to adduce. The trial court withheld its ruling. At the close of all the evidence it denied

the motion because "under the circumstances the proper venue has been laid for each of these charges . . . ." The court thought that the evidence indicated that McBurney maintained his place of business in Prince George's County and that all of his dealings in the matter, except on a few occasions while he was in Montgomery County or in Nevada, "were held either by telephone or from this place of business. . . ." The court did not believe "that one who maintains his place of business in a particular location and is engaged in a business such as an attorney or a bank or any other institution or business that is keeping other persons' money and receives that money at that location . . . can defeat his obligation as a holder of that money where he would appropriate it to his own use by depositing that money in some other jurisdiction." The court also reasoned that "one who maintains his principal place of business, who receives money at that location and does his business from that location in addition to . . . maintaining . . . constructive possession over his funds at that location certainly has an obligation to account to someone from that place of business."

On appeal one of McBurney's contentions challenges the jurisdiction of the Grand Jury for Prince George's County to indict him and the jurisdiction of the Circuit Court for Prince George's County to try him because, he claims, the crimes with which he was charged and of which he was convicted were committed in Montgomery County.[5]

### III

It is clear from the evidence adduced that the crimes of which McBurney was found guilty occurred in Montgomery County and not in Prince George's County as charged. We point out that they are not specific intent crimes. *R.M. Perkins, Criminal Law* (2nd ed. 1969) 743 (hereinafter cited as *Perkins*) declares that "there are two components of every

---

5. All the questions presented on appeal go only to the offenses charged in the second and third counts under which McBurney was convicted. Thus, we are concerned in this opinion only with the crimes presented by those two counts, and refer herein to the indictment only in that context.

crime: one of these is objective, the other is subjective; one is physical, the other is psychical; one is the *actus reus*, the other is the *mens rea*." A general *mens rea* or intent "includes those consequences which (a) represent the very purpose for which an act is done (regardless of likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire)." *Id.* at 747. In some crimes, however, a specific intent is an essential ingredient. *Clark & Marshall, A Treatise on the Law of Crimes* (7th ed. 1967) § 5.06 (hereinafter cited as *Clark & Marshall*). "A specific intent, when an element of the *mens rea* of a particular offense, is some intent other than to do the *actus reus* thereof which is specifically required for guilt." *Perkins* at 762. The two offenses created by the General Assembly and codified as Art. 10, § 44 require only a general criminal intent. That is, they do not have a specific intent as an essential ingredient of the *mens rea* of those crimes. All that they require in the way of intent is the general intent to do the *actus reus*. The *actus reus* in the one crime is the commingling of entrusted funds with an attorney's own funds; in the other crime it is the use of entrusted funds by an attorney for any purpose other than the purpose for which they were entrusted to him. The provision that an attorney "wilfully" violating the provisions of the statute shall be guilty of a misdemeanor does not impose a specific intent. This is so whether "wilfully" in the contemplation of the statute means only intentionally or purposely as distinguished from accidentally or negligently or whether it connotes something more — that the acts were done with an actual impropriety, that is with a bad purpose or without justifiable excuse. *See Perkins* at 780-783; *Clark & Marshall* at § 5.07. Neither meaning reads a specific intent, as that term is used with regard to crimes, into the legislative proscriptions set out in Art. 10, § 44.[6]

---

6. A practical effect of the requirement of a "wilful" violation as a condition for conviction is to remove the offenses beyond any doubt from being considered as *malum prohibitum* which would dispense with the necessity for even a general criminal intent so that the mere fact of the commission of the prohibited acts would support a conviction. *See Clark & Marshall*, §§ 2.02 and 5.10; *Perkins* at 74-76 and 784-799.

That the crimes here considered do not have a specific intent as an essential ingredient is pertinent to the consideration of where they were committed. The State relies heavily on cases involving specific intent crimes, especially embezzlement. "To constitute embezzlement, there must be, as in larceny, a fraudulent intent to deprive the owner of his property." *Clark & Marshall*, § 5.06 and 12.19. "The word 'fraudulent' as used in the definition of embezzlement means that the wrongful conduct was with intent to deprive the owner permanently. . . ." *Perkins* at 293. It is because of this specific intent element that embezzlement may be "committed" in several places and at several times. We said in *Martel v. State*, 221 Md. 294, 299, 157 A. 2d 437, *cert. den.*, 363 U. S. 849 (1960):

> In embezzlement, the rule is that proper venue is the county where the act of appropriation or conversion took place, or where the intent to embezzle was formed, or where the property was entrusted, or where the accused is under an obligation to account.

See *Urciolo v. State*, 272 Md. 607, 325 A. 2d 878 (1974); *Peddersen v. State*, 223 Md. 329, 164 A. 2d 539 (1960); *Bowen v. State*, 206 Md. 368, 111 A. 2d 844 (1955). The choices of venue applicable to embezzlement are not available here. The crimes charged against McBurney were committed as to the commingling offense when and where the funds were in fact commingled, and as to the improper use offense when and where the funds in fact were used for the purpose other than that for which they were entrusted. We think it manifest that in both instances this was in Montgomery County. The commingling of the $8,000 with McBurney's own funds occurred when he deposited the check in his personal account in the bank located in Montgomery County. The use for a purpose other than the purpose for which the funds were entrusted to McBurney occurred when he drew a check in Montgomery County, payable to Searchers Detective Agency located in Montgomery County, in the amount of $7,500 and delivered it to the Agency in

Montgomery County, thereby depriving O'Connor, whose office was then in Montgomery County, of the funds. The payment of the check in the amount of $7,500 diminished the funds standing to McBurney's credit in his account to less than $8,000. In the circumstances, we believe it to be immaterial with respect to the place of the commission of the crimes, that McBurney's law office was in Prince George's County, that Cameron's check was sent to that office and received there and that there may have been some conversations outside of Montgomery County.

## IV

There are two facets to the jurisdiction of a court — jurisdiction over the subject matter and venue. With respect to the subject matter, within its county, a circuit court of this State has full common law jurisdiction in all criminal cases committed in Maryland except where limited by law. Maryland Code (1974) Courts and Judicial Proceedings Article § 1-501. Venue, however, is the place of trial, or where a criminal trial may properly occur.[7] Jurisdiction in this sense relates only to the place where either party may require the case to be tried and unless "venue" is given jurisdictional effect by being a localized action, the question of jurisdiction of subject matter is not presented. The case here may be resolved on the issue of whether the venue was properly laid. Jurisdiction of the subject matter is not involved.[8]

---

7. Confusion has resulted from using the terms venue and jurisdiction interchangeably. In Brown v. State, 37 N.E.2d 73, 78 (Indiana, 1941), the court distinguished them:

> In speaking of the venue of an action or the place of trial, courts often speak of the jurisdiction of the court to try the case. In so using the word "jurisdiction" in connection with the matter of place of trial or venue the courts are speaking of the jurisdiction of the particular case and not of the jurisdiction of the subject matter.

8. "It is assumed, necessarily, in any question as to venue, that the court of such place has 'jurisdiction over the subject matter'." 1 *Wharton's Criminal Procedure* (12th ed. 1974) § 36.

As our concern here is only with venue, we do not reach any question of the jurisdiction of the Grand Jury for Prince George's County to investigate the crimes and return an indictment. *See*, however, State v. Williams, 85 Md. 231, 233, 36 A. 823 (1897); Parrish v. State, 14 Md.

"At common law criminal offenses were tried by a jury of the county where the offense was committed." *Kisner v. State*, 209 Md. 524, 529, 122 A. 2d 102 (1956), citing 4 *W. Blackstone, Commentaries* *303. *See* 1 *Wharton's Criminal Procedure* (12th ed. 1974) § 36 (hereinafter cited as *Wharton*); *L. Hochheimer, Law of Crimes and Criminal Procedure* (1st ed. 1897) § 75 (hereinafter cited as *Hochheimer*). In *Kisner* we gave a comprehensive history of the venue of the circuit courts of this State in criminal cases. 209 Md. at 529-536. We found the common law rule, that the proper venue of a crime is the county of commission, to be the general rule in Maryland. It is widely recognized, however, that in the absence of any limitation by constitutional provision, the power of the legislature to fix the venue of criminal prosecution in a county other than that in which the crime was committed is unrestricted. 1 *Wharton* § 36. *Kisner* pointed to a number of statutes in which the General Assembly of Maryland had prescribed the place of trial, and noted cases in which the Court of Appeals had construed statutes as authorizing trial in a county other than the one in which the crime was committed. *Kisner* discussed the constitutional and statutory provisions regarding the removal of causes providing that when the prerequisites to removal exist, the court shall order the transmission of the case "to some other court having jurisdiction in such case for trial," remarking that the quoted language would seem to refer to jurisdiction of the subject matter. *Kisner v. State, supra,* 209 Md. at 531-534. *Kisner* concluded that the common law necessity for trial in the county of the commission of the crime is not a fundamental right or requirement. *Id.,* at 531. It followed that although in a criminal proceeding jurisdiction of the subject matter cannot be conferred by consent, subject matter being the essential test of jurisdiction, venue is waivable in a criminal case, expressly or by failure to make

238, 246 (1859); 4 *W. Blackstone, Commentaries* *303 and *305; 2 *Wharton's Criminal Procedure* (12th ed. 1975) § 229; *L. Hochheimer, Law of Crimes and Criminal Procedure* (1st ed. 1897) § 133; *J. Gould, Criminal Pleading* 89 (1936). *Cf.* Urciolo v. State, 272 Md. 607, 616, 325 A. 2d 878 (1974).

a timely objection. *Id.*, at 527 and 534. Timely objection to venue is one interposed no later than the first pleading to the charge. *Id.*, at 535; *Bafford v. State*, 235 Md. 41, 45, 200 A. 2d 142 (1964); *Cole v. State*, 232 Md. 111, 118, 194 A. 2d 278, *cert. den.*, 375 U. S. 980 (1963); *Medley v. Warden*, 210 Md. 649, 653, 123 A. 2d 595 (1956).

The legislature has not exercised its control over venue with respect to the crimes it created by enacting the statute codified as Art. 10, § 44. Thus, as to those crimes, the common law rule prevails. Under that rule venue was in the Circuit Court for Montgomery County where the crimes were committed and not in the Circuit Court for Prince George's County where they were tried. Venue was not waived by McBurney; he made timely objection.[9] It follows that the Circuit Court for Prince George's County, regardless of jurisdiction over the subject matter, lacked jurisdiction to try the particular case. In other words, it was without venue with respect to the offenses presented by the second and third counts of the indictment.

V

The defense of improper venue was properly interposed by McBurney's motion to dismiss. Maryland Code (1957) Art. 27, § 606 (formerly § 692, Art. 27 of the 1951 Code) provided that: "No indictment or presentment for felony or misdemeanor shall be quashed, nor shall any judgment * * *, whether after verdict, by confession or otherwise, be stayed or reversed for the want of a proper or perfect venue, when the court shall appear by the indictment, inquisition or presentment * * * to have jurisdiction over the offense * * * nor for any matter or cause which might have been a subject of demurrer to the indictment, inquisition or presentment." Former Rules 3 and 9 of the Criminal Rules of Practice and Procedure of the

---

9. There was no suggestion of removal. Constitution of Maryland, Art. IV, § 8; Maryland Rule 738. *See* Kisner v. State, 209 Md. 524, 530-531, 122 A. 2d 102 (1956). Removal would have raised the issue of the validity of the indictment through the question of the jurisdiction of a grand jury to inquire into and indict for crimes committed out of the county for which they were sworn, an issue which we do not reach. *See* note 8, *supra.*

Court of Appeals substituted a motion to dismiss for the demurrer referred to in the statute, amending it to that extent. *Bonneville v. State,* 206 Md. 302, 310, 111 A. 2d 669 (1955). Section 606 of Art. 27 was repealed by Acts 1963, ch. 558, § 1. Cross references were given to Maryland Rules 714 and 725. By Rule 725 a all demurrers and motions to quash are abolished and defenses and objections raised before trial which theretofore could have been raised by them shall be raised by motion to dismiss or to grant appropriate relief. Rule 725 b contains provisions which in substance are the same as those in former Rule 3 (b) (2): "Defenses and objections based on defects in the institution of the prosecution or in the indictment, other than that it fails to show jurisdiction in the court or to charge an offense, may be raised by motion before trial." [10] We said in *Kisner v. State, supra,* 209 Md. at 535, that Rule 3 was taken from the Federal Rules and observed that Federal cases have held the defense of improper venue is to be interposed by a motion to dismiss before pleading. We hold that the trial court erred in denying McBurney's motion to dismiss the second and third counts of the indictment on the ground of improper venue. [11]

We reverse the judgments and enter a dismissal of the second and third counts of the indictment. Maryland Rule 875 a.

---

10. The statement as to "jurisdiction" seems to refer, as it does in the matter of removal, *see* Kisner v. State, 209 Md. 524, 531, 122 A. 2d 102 (1956), to jurisdiction of the subject matter.

11. There was no suggestion on motion by the State's Attorney or by the court on its own motion that the indictment be amended pursuant to Maryland Rule 714 as both believed that venue was properly laid in Prince George's County. An amendment to allege that the crimes were committed in Montgomery County would not only raise the issue of the jurisdiction of the Grand Jury for Prince George's County to inquire and indict, but may be a matter of substance so as to prohibit amendment without the consent of the defendant as provided by Rule 714 a. *See* 2 *Wharton's Criminal Procedure* (12th ed. 1975) § 276; L. Hochheimer, *Law Crimes and Criminal Procedure* (1st ed. 1897) § 269. Also, such amendment would apparently be contrary to the general rule that: "*Apart from venue,* an indictment may be amended to correct an error in respect of the particular place where the offense charged was committed." (Emphasis added). 2 *Wharton's Criminal Procedure* (12th ed. 1975) § 367. *See* Kaefer v. State, 143 Md. 151, 156, 122 A. 30 (1923); Acton v. State, 80 Md. 547, 550-551, 31 A. 419 (1895); Annot. 14 A.L.R.3d 1335 (1967).

In view of our action, it is not necessary to reach the other questions presented. We, therefore, have not considered the matter of the sufficiency of the evidence to sustain the convictions, and nothing we have said herein is to be taken as an indication of any expression whatsoever on that point.

*Judgments reversed; counts two and three of the indictment in Criminal Trial No. 16258 in the Circuit Court for Prince George's County dismissed; costs to be paid by Prince George's County.*